# FEBRUARY, 1915

## G. E. GILMORE ET AL. *v*. JOHN O'NEIL ET AL.

### No. 2344. Decided February 3, 1915.

**1.—Equitable Title—Action—Reformation of Deed.**

The holder of the superior title to land, though his title be merely the equitable one, may maintain or defend an action for recovery of the land against all others. including the holder of the legal title. It is not necessary that he convert his title to a legal one, as by correction of a mistake in the deed under which he holds, in order to enable him to do so. (Pp. 26, 27.)

**2.—Same—Limitation.**

The fact that the holder of the superior equitable title has lost by limitation the right to convert this into full legal title by an action to correct a mistake in the deed under which he holds, does not prevent him from maintaining or defending against an action for the recovery of the land by right of his equitable title. (Pp. 28, 29.)

**3.—Same—Same.**

Limitation does not run against the superior equitable title of one in possession. His rights of action or defense under such title are barred only by adverse possession. (P. 29.)

**4.—Equitable and Legal Title—Action—Limitation—Reformation of Deed.**

·One who had acquired the superior equitable title to land by purchase, payment of consideration, survey and marking of boundaries, and possession and valuable improvements made, could maintain action thereon, or defend action thereby, against the grantor or his heirs, or against their assignees not entitled to protection as innocent purchasers, though by mistake in the description his deed failed to convey him the legal title. Reformation of his deed was not necessary to enable him to maintain such action or defense, nor was his right to maintain it lost when the right to action for reformation was barred by limitation. In the absence of adverse possession of the land, limitation did not run against his right to hold or recover the land upon his equitable title, or to be quieted therein; nor, when he alleged the facts showing his equitable title, did the fact that he also asked for reformation of the deed render his assertion of the title so shown subject to the plea of limitation. (Pp. 23-29.)

**5.—Record of Title—Notice.**

A purchaser of land is charged with notice of the boundaries of a previous purchaser from the same grantor which are recognized by the deed under which he himself holds. (Pp. 29, 30.)

**6.—Same—Same.**

A purchaser of all the remaining interest of the grantor in a certain tract of land must take notice of previous recorded deeds by such grantor affecting the interests remaining. Where a prior grantee held under a deed with description not including all the land he purchased and claimed, but his land had been surveyed and marked out by grantor and grantee so as to include all, and these boundaries were recognized by a later recorded deed from the same grantor to another and adjoining grantee, describing the latter's boundaries as running with the lines of the first as so surveyed and marked, the purchaser of the undisposed-of remaining interest had notice by the record of the true boundaries of such prior grantee's land. (P. 30.)

**7.—Innocent Purchaser—Equitable Title—Actual Notice.**

Purchasers of the unsold interest of grantors in a tract of land, to whom the grantors pointed out such unsold land which they were conveying, were not innocent purchasers of land of a prior grantee who had equitable title only to a part of his tract which, by mistake, was not described in his deed, but which was not included in the land so pointed out as unsold, and to which their grantors then asserted no claim. The circumstances constituted actual notice of the rights of the equitable owner. (P. 30.)

**8.—Case Stated.**

D. purchased from J. 1⅔ acres of land out of the S. E. corner of a 50-acre tract owned by the latter. By mistake the deed described it as 1⅓ acres; but by agreement between J. and D. the land so bought was surveyed and marked out as a rectangle in the S. E. corner of the 50-acre tract 347.86 feet long by 208.71 feet broad, and containing 1⅔ acres. D. sold this to O'N. who sunk an oil well and produced oil at a point in the corner of the rectangular 1⅔ acres as so surveyed, but outside his land if he owned only 1⅓ acres surveyed in the same form, and also outside it if he owned 1⅔ acres surveyed in the form of a square in the S. E. corner. After the sale to D., J. sold to an oil company an adjoining 15 acres out of the tract, describing it by bounds as running with and not including the above 1⅔ acres as surveyed in rectangular form. The heirs of J. subsequently executed an oil lease to B. and others on all their remaining interest in the 50-acre tract, pointing out the portion unsold as lying in another part of the 50-acre tract and not including that claimed by O'N. The action was by plaintiffs claiming, under this lease, the ⅓ acre on which the oil well was sunk, as being land which their grantors still owned at the time of the lease; and, as interveners, by the oil company claiming same under the deed from J. to it, and by the heirs of J. claiming still to own the ⅓ acre in controversy, and all sought recovery of the value of the oil produced by O'N. as well as the land. Held:

(1) That, by his purchase of the rights of D. and his possession and improvements, O'N. acquired an equitable title to the ⅓ acre in controversy on which he could maintain or defend an action for its recovery against J. or his heirs, or their grantees, not innocent purchasers.

(2) That the oil company took no title to the ⅓ acre in controversy; for its deed recognized and excluded the tract conveyed by J. to D., describing it as containing 1⅔ acres, and bounding it by the rectangular lines surveyed, which embraced such ⅓ acre.

(3) That the heirs of J. had no claim, defendants' title being good against them, and if not so, then passing to others under the oil lease if included in its description.

(4) That those claiming under such oil lease took no interest in the ⅓ acre in controversy, being charged, as purchasers of only the unsold and remaining interest of the heirs of J., with notice of all prior recorded conveyances by him, including that to the oil company, which recognized the sale under which O'N. held, and the boundaries thereof as claimed by him; also having actual notice of such prior sale to him by having other lands pointed out to them as the portion remaining unsold. (Pp. 22-30.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Harris County.

Gilmore and others brought the suit against O'Neil. The Texas Oil Company and the heirs of Jones intervened. O'Neil had judgment in the trial court, which was reversed on appeal. Writ of error was granted on separate applications by plaintiffs below and by O'Neil.

*Lane, Wolters & Storey* and *Wm. A. Vinson,* for plaintiff in error O'Neil.—O'Neil's right to have the description in the deed from James Jones and wife to Nancy Duey corrected, so as to make it conform to the original intention of the parties thereto, and to remove the clouds from his title, was not barred by the statute of limitations of four years, the action being essentially one to recover the land. Payne v. Ross, 10 Texas Civ. App., 419; Holman v. Criswell, 15 Texas, 395; Sanborn v. Crowdus, 99 S. W., 447; Riggs v. Polk, 3 Texas Civ. App., 129; Stuart v. Duffy, 23 Texas Civ. App., 221; Rutherford v. Carr, 99 Texas, 101; Watson v. Harris, 130 S. W., 240; Craig v. Harless, 33 Texas Civ. App., 257; Butler v. Carpenter et al., 68 S. W., 823 (Mo.); Williamson v. Brown, 93 S. W., 791, 195 Mo., 313; Pinkham v. Pinkham, 83 N. W., 837, 60 Neb., 600.

*John Charles Harris (Harris & Harris,* of counsel), for plaintiffs in error Gilmore and others (parties claiming under oil lease).—The Court of Civil Appeals erred in holding that it was proper to resort to parol testimony to show the intention of the parties as to the meaning of said lease. Kingston v. Pickins, 46 Texas, 101; Giddings v. Day, 84 Texas, 608.

Plaintiffs' leases, calling for thirty acres of land out of the Jones one-third league, same being the unsold portion of the James Jones fifty-three-acre tract, on their face and by their express written terms, embrace the land in controversy in this suit. 5 Cyc., p. 879, and cases therein cited from about every State in the United States.

As the plaintiffs in error, Beatty and Cheek, acquired their rights eight months before John O'Neil had any rights, legal or equitable. in law or in fact, the plaintiffs in error are innocent purchasers for a valuable consideration, without notice of record or in fact of any rights which John O'Neil had, because in the months of January and May, 1908, he had no rights. Payne v. Ross, 10 Texas Civ. App., 419; Holman v. Criswell, 15 Texas, 395; Early v. Sterrett, 18 Texas, 113; Riggs v. Polk, 3 Texas Civ. App., 129; Stuart v. Duffy, 23 Texas Civ. App., 221; Rutherford v. Carr, 99 Texas, 101; Watson v. Harris, 130 S. W., 240; Craig v. Harless, 33 Texas Civ. App., 257.

James Jones having caused the one and two-thirds acres, intended to be conveyed by said deed to Mrs. Duey, to be surveyed and marked on the ground in the southeast corner of his fifty-acre tract, in the form of a parallelogram, the lines of which, from east to west, were 347 feet, and from north to south were 208.7 feet, such acts on the part of James Jones amounted to a partition and segregation of said land

from the larger tract, and were binding upon the said James Jones and his wife, and all persons claiming under them. Linnartz v. McCulloch, 27 S. W., 279; Mass v. Bromberg, 28 Texas Civ. App., 145.

It having been conclusively shown and found by the jury that there was a mistake made in the description of the land in the Duey deed; that Mrs. Duey bought and paid for one and two-thirds acres, and that James Jones and his wife intended to convey to her that quantity of land; and that said James Jones caused one and two-thirds acres to be surveyed for her, and recognized her ownership thereto, the heirs of James Jones, and all those parties claiming under them were not entitled to recover. Payne v. Ross, 10 Texas Civ. App., 419; Mass v. Bromberg, 28 Texas Civ. App., 145; Riggs v. Polk, 3 Texas Civ. App., 129; Linnartz v. McCulloch, 27 S. W., 279.

The conduct of James Jones in causing the one and two-thirds acres to be surveyed in the form of a parallelogram, and staked off on the ground, and in having maps made and circulated, showing the Duey tract so laid off, was sufficient to estop him from recovering said land, since it appears that O'Neil saw said maps, and went into possession of the land as actually staked on the ground. The ancestor being estopped, his heirs, and all persons claiming under them, are also estopped. Hardeman v. Maud, 78 Texas, 84; Portis v. Hill, 30 Texas, 529; Spears v. Conley, 87 S. W., 1072.

This equity to the one-third of an acre would have been incapable of enforcement as a title in Mrs. Duey's hands, because she had no possession. When Beatty and Cheek took their lease to the land in controversy, they were innocent purchasers for a valuable consideration without any notice of any right in John O'Neil, equitable or legal; and with notice that the only title which Nancy Duey had was a title to one and thirty-five hundredths acres of land out of the southeast corner of the Jones tract and being in the form of a square.

*S. H. Brashear,* for defendants in error, Arena Jones and others (widow and heirs of James Jones).—It was not error to submit to the jury what land was intended by the lease, and their verdict finding that it was only the thirty-acre portion should be allowed to stand. Regan v. Hatch, 91 Texas, 616; Arambula v. Sullivan, 80 Texas, 615; Smith v. Texas & N. O. R. Co., 101 Texas, 405; Waggoner v. Tinney, 102 Texas, 254; Busby v. Bush, 79 Texas, 656; West v. Hermann, 104 S. W., 428; Holman v. Houston Oil Co., 152 S. W., 885; Bullard v. Railroad Co., 60 N. E., 380, 178 Mass., 570.

The uncontradicted evidence shows that the land in controversy was one of the unsold portions of the James Jones fifty-acre tract, and was not embraced, and not intended to be embraced, in the terms of the lease to Cheek and Beatty, which was afterwards assigned to Gilmore and Nicholson. The plaintiff O'Neil having waited more than four years before bringing any action to reform the deed, was barred from doing so after that time by the statute of limitations of four years, and if it be true that he was in possession of the land at the

time of the institution of the suit, and that he had drilled an oil well thereon, and if it were also true that there had been no dispute of his title until a short time before the suit was instituted. these facts would not excuse him from bringing the suit within the four years.    That defendants' action was one to reform the deed:   Chicago. etc., Ry. Co. v. Titterington, 84 Texas, 218; McCampbell v. Durst, 15 Texas Civ. App., 535.   Insufficiency of excuse for delay in bringing action:   Norton v. Davis, 83 Texas, 36; Boren v. Boren, 38 Texas Civ. App., 139; Kuhlman v. Baker, 50 Texas, 636; Rowe v. Horton, 65 Texas, 92; Smith v. Fly, 24 Texas, 349-355; McCampbell v. Durst, 15 Texas Civ. App., 535; Waters v. East, 56 S. W., 941, 23 Texas Civ. App., 412; Bremond v. McLean, 45 Texas, 18; Matthews v. Benavides, 18 Texas Civ. App., 475; Kennedy v. Baker, 59 Texas, 153-163: Calhoun v. Burton, 64 Texas, 516-519; Walet v. Haskins, 68 Texas, 418-423; Cooper v. Lee, 75 Texas, 114.

That the description should be construed as being one acre in a square form, in the southeast corner of the Jones fifty-acre tract:   Morris' Admrs. v. Stewart's Admrs., 1 G. Green (Iowa), 375; Smith v. Nelson, 110 Mo., 552; Jackson v. Vickery, 1 Wend., 406; Welch's Lessee v. Ringer, 2 Ohio., 327; Dolan v. Trelevan, 31 Wis., 147; Wilkinson v. Roper, 74 Alabama, 140; Lego v. Medley, 79 Wis., 211.

O'Neil had no right to rely on anything contrary to the description in his deed, and can not urge estoppel against these defendants in error. Waggoner v. Dodson, 96 Texas, 415; Cowans v. Ft. W. & D. C. Ry. Co., 109 S. W., 403; Masterson v. Little, 75 Texas, 682; Lewis v. Brown, 39 Texas Civ. App., 139; Wortham v. Thompson, 81 Texas, 350; Scobey v. Sweatt, 28 Texas, 713; Breeze v. Brooks, 22 L. R. A., 256, 71 Cal., 169; Trenton Banking Co. v. Duncan, 86 N. Y., 221; Thompson's Appeal, 126 Penn. State, 367; Andrews v. Aetna Life Ins. Co., 85 N. Y., 334; Beach's Mod. Eq. Jur., sec. 1097, 1113; Pomeroy's Eq. Jur., 812; 16 Cyc., 734, 744, 766.

MR. JUSTICE PHILLIPS delivered the opinion of the court.

This suit, brought as an action in trespass to try title by G. E. Gilmore, W. H. Nicholson, D. R. Beatty and J. R. Cheek, against John O'Neil and the Texas Company, is a controversy over about one-third of an acre of ground, and $29,563.85, the proceeds of the oil from an oil well sunk upon the tract by the defendant O'Neil; this amount being in the hands of the Texas Company, whose position in the case is merely that of a stakeholder.   The land was originally owned by James Jones, under whom all parties claim as the common source of title, as a part of a fifty-acre tract, the community property of himself and his wife, Lucy Jones.   Interventions were filed by Lucy Jones and heirs of Thomas Jones, herein denominated for convenience as the Jones heirs, and the J. M. Guffey Petroleum Company, respectively, asserting title to the strip of ground and the proceeds of the oil.   In the trial court the case was submitted to a jury on special issues, resulting in a judgment for O'Neil against all other parties.   This judgment

was reversed by the honorable Court of Civil Appeals, its determination being that O'Neil was not entitled to the land or the fund, but had the right to be reimbursed out of the latter for his expense incurred in the production of the oil,—$11,000, the amount found by the jury; that the Guffey Petroleum Company should take nothing; and that the land and the balance of the fund belonged to those showing themselves entitled as heirs or assignees of Thomas Jones and wife, for the ascertainment of whom and their rights the case was remanded. The writ of error was granted by this court upon the respective petitions of Gilmore, the administratrix of Nicholson's estate, Cheek and Beatty, and of O'Neil.

O'Neil's claim is based upon a sale, made in 1903, by Jones and wife to Nancy Duey of a tract out of the southeast corner of the Jones fifty-acre tract, described in the deed executed by Jones and wife at the time, dated September 28, 1903, as "one and *thirty-five hundredths* acres of land out of the S. E. corner of the fifty-acre tract sold to us by John M. Young and wife by deed dated Oct. 22, 1895, and being a part of the John Browne Jones league, etc." On August 1, 1908, Mrs. Duey conveyed an undivided one-half interest in this tract to Kuhn, executing, on the same date, a power of attorney in his favor, authorizing him to sell or lease her interest. On July 29, 1908, Kuhn, for himself and as attorney in fact for Mrs. Duey, executed an oil lease of the tract to Donahue, who, on August 1, 1908, assigned the lease to O'Neil. In the deed and the power of attorney of Mrs. Duey to Kuhn and in the lease to Donahue, the tract was described as in the deed from Jones and wife to Mrs. Duey. On September 17, 1908, for a recited consideration of $3500, Mrs. Duey, acting through Kuhn as her attorney in fact, and Kuhn, for himself, executed and delivered to O'Neil a deed describing the tract as "1.662 acres of land," and by metes and bounds so as to constitute in the southeast corner of the Jones fifty acres a rectangular tract 347 feet long and 208.7 feet wide, that is, extending 347 feet east and west and 208.7 feet north and south, which would include the strip of land in dispute.

According to the findings of the jury,—which were in accordance with the contention of O'Neil upon the trial, on a special issue submitted by the court, the actual transaction between Nancy Duey and Jones and wife was the purchase by the former of $100 worth of land out of the southeast corner of the fifty-acre tract at the price of $60 per acre, or one and two-thirds acres, and by mutual mistake in the preparation and execution of the deed the quantity of land sold and conveyed was therein described as one and *thirty-five hundredths* acres, when it should have been described as one and *two-thirds* acres. The jury further found that after his conveyance to Nancy Duey, James Jones caused the one and two-thirds-acre tract, claimed by O'Neil, to be surveyed and set apart as the tract sold and conveyed to Nancy Duey by himself and wife, and at all times thereafter to the time of his death recognized and treated it as such. It appears that the Jones heirs

never asserted to the contrary until shortly before the institution of the suit.

On May 20, 1905, Jones and wife conveyed to the National Oil and Development Company out of the fifty-acre tract, fifteen acres, the deed having been duly filed for record on May 22, 1905. The calls in this deed refer to the land theretofore conveyed by Jones and wife to Nancy Duey, as "Mrs. Duey's one and *two-thirds*-acre tract." One of the boundary lines of the fifteen acres conveyed is given in the deed as the entire north line of the Duey tract, and another as the entire west line of the latter tract, which by the deed are revealed as being respectively 347 feet and 208.7 feet in length. In other words, the fifteen acres is described in this deed as entirely bounding the Duey tract on the north and west, and the calls in the deed reveal the Duey tract to be rectangular in form, 347 feet long to the east and west, and 208.7 feet wide to the north and south.

The J. M. Guffey Petroleum Company's claim is under this deed.

Prior to the execution of the conveyance to Nancy Duey, Jones and his wife had sold to Barrett a tract of three acres; and it appears that there had also been sold out of the fifty acres another small tract, to Dunnam, stated in the opinion of the Court of Civil Appeals to consist of about one-half of an acre. Counting the Duey tract as one and *thirty-five hundredths* acres, after the conveyance of the fifteen acres to the National Oil and Development company on May 20, 1905, there remained unsold of the fifty-acre tract, thirty and three-twentieths acres. Counting the Duey tract as one and *two-thirds* acres, the remainder of the fifty-acre tract amounted to twenty-nine and five-sixths acres.

The basis of the claim of Gilmore, Nicholson, Beatty and Cheek, the plaintiffs in the suit, was an oil lease executed by Mrs. Lucy A. Jones, on January 8, 1908, after the death of her husband, James Jones, in 1906, to Beatty and Cheek, which described the land so leased as "thirty acres of land out of the John Brown Jones one-third league, said thirty acres being all of my remaining interest in the James Jones fifty-acre tract out of the said Jones league, said land being north of the Butler subdivision and south of the Bissonet tract in said one-third league"; and a renewal of that lease by Mrs. Jones and others, heirs of James Jones, dated May 6, 1908, in favor of Beatty and Cheek, describing the land as "thirty acres of land out of the John Brown Jones one-third league in Harris County, Texas, same being the unsold portion of the James Jones fifty-acre tract, and lying north of the Butler subdivision and south of the Bissonet tract in said one-third league." This lease was assigned to Gilmore and Nicholson by Beatty and Cheek, on July 16, 1908.

If the Duey tract is reckoned as consisting of one and *thirty-five hundredths* acres and as laid out in the form of a rectangle, 208.7 feet wide north to south, the strip in dispute, which extends 66.1 feet east and west and 208.7 feet north and south, would not be included within its lines. If that tract be counted as containing one and *two-thirds* acres and is laid out in the form of a square, the strip would like-

wise lie without its boundaries. As has been already noted, if the Duey tract consists of one and *two-thirds* acres, laid out in rectangular form, 347 feet east and west and 208.7 feet north and south, as claimed by O'Neil, and as the jury found was recognized and treated by Jones to time of his death as constituting the tract sold by himself and wife to Nancy Duey, it would include the strip in controversy

The position of Gilmore, Nicholson's administratrix, Beatty and Cheek is, that the sold portions of the fifty-acre tract at the time of the execution of the leases under which they claim, were the Barrett three-acre tract, the Dunnam one-half-acre tract, the Duey one and *thirty-five-hundredths*-acre tract, and the National Oil and Development Company fifteen-acre tract; the deeds to none of which included or conveyed the strip in dispute; that, accordingly, it, at that time, constituted a part of "the remaining interest" in, or "unsold portion" of the original tract, and the descriptions of the land embraced in their leases, namely, "thirty acres of land out of the John Brown Jones one-third league, said thirty acres being all of my remaining interest in the James Jones fifty-acre tract out of the said Jones league," in one, and "thirty acres of land out of the John Brown Jones one-third league in Harris County, Texas, same being the unsold portion of the James Jones fifty-acre tract," in the other, were, therefore, effectual, as a matter of law, to include it.

The west boundary line of the fifteen acres conveyed to the National Oil and Development Company extends entirely from the north to the south line of the fifty-acre tract, and is some distance west of the west line of the Duey tract, however reckoned. All of the portion of the fifty-acre tract unsold at the time of the execution of the Beatty and Cheek leases lay west of the west line of the Oil and Development Company fifteen acres, unless the strip in controversy was a part of the unsold portion. It is apparent, therefore, that if the strip be treated as a part of the unsold portion of the fifty-acre tract, it lay remotely situated from the remainder of the thirty acres embraced in the leases under which the plaintiffs claimed.

We insert a sketch at this place showing the situation of the respective tracts:

According to further findings of the jury, O'Neil believed that he was acquiring a leasehold to the one-third of an acre when he obtained his lease from Mrs. Duey and Kuhn. He entered into possession under the lease in August, 1908, and under such belief, during that month erected his derricks and sunk the oil well in the northwest corner of the one-third of an acre tract, at an expenditure for sinking the well and producing the oil, of $11,000. He was in possession when the plaintiffs filed their suit, on September 30, 1908, holding under the lease, and the deed of Mrs. Duey and Kuhn executed September 17, 1908. None of the other parties appear to have realized that they had any right to this one-third of an acre, or to have asserted any claim to it, until, through O'Neil's efforts, the oil well was produced and it was rendered valuable. Then the controversy began.

It is, in our opinion, a wholly mistaken view to assume, as urged by Gilmore and his co-plaintiffs in error in the Court of Civil Appeals, and as that learned court determined, that the defense interposed in the suit by O'Neil was in effect an action on his behalf to reform the deed executed by James Jones and wife to Nancy Duey, held by the court to be not maintainable because barred by the four-year statute of limitation; or that the establishment of his defense was in any way dependent upon the reformation of that deed. The real questions which arise upon the respective claims of the plaintiffs and O'Neil's defense, fall within a much narrower compass, as it is believed a brief analysis of the case will disclose.

It will simplify the entire case to first determine where lies the superior title to the land. This does not mean the legal title, but the superior title, whether legal or equitable, since an equitable title may

be superior to the legal title, and will prevail over the legal title if capable of being enforced against it. The claim of the plaintiffs was predicated upon their asserted ownership of a leasehold supported by the legal title, because of the description in their lease; and, in the discussion, their interest will be referred to as a legal title to the land. Essential to the allowance of their claim is the determination that the description in their lease was sufficient. But if that is admitted, they may be said to hold the legal title. This follows, because the description in the deed of Jones and wife to the National Oil and Development Company, under which the Guffey Company holds and claims, clearly did not include the land; the legal title had not been conveyed by Jones and wife prior to the death of Jones, and, therefore, rested in Mrs. Jones and Jones' heirs at the time of the execution of the plaintiffs' lease; and as to Mrs. Jones and the Jones heirs executing the lease, it passed thereby to Beatty and Cheek if the land was therein described.

This disposes of the claim of the Guffey Company. And, if the description in the lease to Beatty and Cheek be held sufficient, it likewise disposes of the claim of the Jones heirs. If that description did not include the land, the legal title remained in the Jones heirs, and the case would be then resolved into an issue between them and O'Neil as to the superiority of their respective titles.

O'Neil, admittedly, had no legal title to the land. Such title as he possessed was purely equitable. If it amounted to the superior title, it was, of course, subject to enforcement against any legal title in the Jones heirs, derived, as it was, from their ancestor. And, if the superior title, it would likewise prevail against any legal title in the plaintiffs, unless they occupied the position of innocent purchasers. If their lease did not describe the land, the plaintiffs had no character of title. If it did describe the land and their position was that of innocent purchasers, any equitable title in O'Neil would yield to the legal title conferred by the lease, though, strictly speaking, his were the superior title. But it is immaterial whether the description in their lease was sufficient to invest them with the legal title, if their rights were acquired with notice of a superior equity in O'Neil's grantor, afterwards ripening into title in his hands.

These are the questions which contain the heart of the case. An examination of them is, therefore, appropriate.

If the actual transaction between James Jones and Mrs. Duey was, as found by the jury, a sale to her by Jones and wife of $100 worth of land out of the southeast corner of the Jones fifty-acre tract, at the price of $60 per acre, for which she paid the full consideration, there was really sold to Mrs. Duey a tract of one and two-thirds acres. The deed given her having conveyed by its terms only one and thirty-five hundredths acres, Jones and wife held the legal title to that part of the land sold but not conveyed, namely, one-third of an acre, approximately, in trust for Mrs. Duey; and she became the owner of a corresponding equity in the one-third of an acre. And if, following the

conveyance, Jones agreed that the one and two-thirds acres sold to her should be laid out in the southeast corner of the fifty-acre tract in the form of a rectangle, 347 feet long east and west, and 208.7 feet wide, and caused one and two-thirds acres to be so surveyed and laid out on the ground, recognizing and treating such tract as the land sold, as the jury further found, Mrs. Duey, consenting to such designation of the land, thereupon, in view of her purchase and payment, became invested with the legal title to such tract to the extent of one and thirty-five hundredths acres, and the owner of an equity in the remainder. This is plain, since Jones could not dispute his own designation of the tract, nor would anyone acquiring title from him, or his heirs, by subsequent conveyance, with notice of Mrs. Duey's equity, be heard to dispute it.

Under his lease and deed from Mrs. Duey and Kuhn, the latter describing the one and two-thirds acres as designated on the ground by Jones, O'Neil obtained all the rights in the tract originally owned by Mrs. Duey, including her equity in the one-third of an acre in controversy. This equity to the one-third of an acre would have been incapable of enforcement as a title in Mrs. Duey's hands, because she had no possession; and, being out of possession, the reformation of the deed executed by Jones and wife would have been necessary to invest her with title. But had she taken possession, accompanied by improvements, having already paid the full purchase price of the land, there could be no doubt of the perfection of her equity into an equitable title, superior to the legal title in Jones and wife, and entitled to prevail against it in the hands of any subsequent owner not protected as an innocent purchaser. This would have been her right, regardless of any reformation of the deed; for, in such event, she would have held the superior equitable title to the one-third of an acre independent of the deed; and the deed could have presented no obstacle, either to her recovery or defense upon such title. But, being out of possession, what were Mrs. Duey's rights, and those of O'Neil, her grantee? She stood clear in the ownership of an equity in the one-third of an acre in dispute, because she had bought and paid for it and in good conscience it belonged to her; with an undoubted right to the title, and, by possession and improvements, to perfect her equity into a title. That these were her rights, and recognized as her rights by Jones, from whom she bought the land, according to the findings of the jury, can not be gainsaid. Owning them, she could convey them; and her grantee would necessarily succeed to them. O'Neil acquired them; was let into possession under conveyance from her, believing that he was obtaining the right to the one-third of an acre; and was in possession when the suit was filed. Upon the faith of his right he made a large expenditure for the production of the well, which gave the land its value. His entry into possession and his ownership were unquestioned by the Jones heirs, or anyone else, until shortly before the institution of the suit. It is evident, under this state of facts, that, independent of the deed from Jones and wife to Mrs. Duey, O'Neil held a perfected equitable

title to the land in controversy, superior to the legal title in Jones or his heirs, or in the hands of anyone acquiring it from them with notice of the equity.

O'Neil's pleading recited the facts substantially as we have stated them, and as the jury found them, the effect of which was to invest him with a superior equitable title to the land, and reveals that upon such a title and notice of the equity by the plaintiffs in the acquisition of their rights, his defense to their suit was rested. His prayer for the removal of the cloud upon his title cast by the claims of the plaintiffs and interveners did not alter the character of his defense, or convert it into an affirmative action subject to limitation. If his was the superior title and capable of enforcement against the legal title, his right to be quieted in it would follow. Asserting, as he was, a superior equitable title, independent of the deed of Jones and wife to Mrs. Duey, as the basis of his defense, in what way was the reformation of that deed essential to the establishment of his defense? With no possession adverse to his right, how could limitation affect his right? It is not the law, and could not well be the law, that in a trespass to try title action, proof of an equitable title by a defendant in possession is subject to limitation. What was said by Judge Wheeler in Newsom v. Davis, 20 Texas, 419, concerning the rights of a defendant in possession of land under a bond for title, having paid the consideration,—one no more favorably circumstanced than a defendant in possession under such a sale as is shown to have been made by Jones to Mrs. Duey, with the full consideration paid, followed by valuable improvements in good faith,—may be here aptly quoted:

"The defendant being in possession under a contract to convey, and having paid the consideration, is the equitable owner of the land. His is superior to the legal title remaining in his vendor; and there being no possession adverse to his right, the statute of limitations does not run against it. Vardaman v. Lawson, 17 Texas, 10."

It was announced in Rutherford v. Carr, 99 Texas, 101, 87 S. W., 815: "There is no statute of limitation which prescribes a bar to the proof of a fact material to sustain or defeat a cause of action or defense; such statutes act upon the cause of action."

This is not a case where, as in Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Texas, 218, 19 S. W., 472, 31 Am. St., 39, and McCampbell v. Durst, 15 Texas Civ. App., 552, 40 S. W., 315, it was necessary, in order to establish the title, to set aside a deed which stood as an obstacle to recovery.

Waiving the question of the sufficiency of the description in the plaintiffs' lease, and admitting for the present purpose that it was sufficient, was the title possessed by O'Neil entitled to prevail against the legal title which a sufficient description in their lease would have conferred upon the plaintiffs? This depends upon whether their position was that of innocent purchasers of the legal title for value, without notice of the superior equity, or such knowledge as reasonably should have put them upon inquiry. At the time the plaintiffs acquired their

lease, the deed of Jones and wife to the National Oil and Development Company, conveying the fifteen-acre tract to that company, had been of record for more than two years. That deed was in their chain of title, and they were charged with notice of its recitals. Caruth v. Grigsby, 57 Texas, 265. It embraced "a sold portion" of the fifty-acre tract, and reference to it was, of course, necessary to determine what "the remaining interest" in the tract, or "the unsold portion" of the tract was, in virtue of which description it is that the plaintiffs claim the land under their lease. It distinctly referred to the land sold by Jones and wife to Mrs. Duey as being a tract of one and *two-thirds* acres; and, calling for the north and west lines of that tract, by measurement, as boundary lines of the fifteen acres conveyed, revealed, as has been before noted, that Mrs. Duey's land lay upon the ground so as to include within its lines, and exclude from their lease, the strip in controversy. This could not amount to less than notice to them that the source of their title and hers recognized, by an actual measurement of the ground, her right to the land in dispute, and, if the description in their lease embraced it, that they were obtaining a questionable title. In addition to this, the jury found that when Beatty and Cheek were negotiating for the lease, they were taken upon the ground and shown that the land proposed to be leased lay west of the west line of the National Oil and Development Company fifteen-acre tract, a location entirely remote from this strip; and that Beatty and Cheek accepted the lease with the understanding between themselves and their lessors, the heirs of Jones, that the land leased to them was so located. This constituted further notice to the plaintiffs that the heirs of Jones recognized that this strip was not "an unsold portion" of the tract; necessarily, therefore, equivalent to notice, under this description in the lease, that it was "a sold portion."

With their rights acquired under such circumstances, it is clear that the plaintiffs were not entitled to be protected as innocent purchasers. This renders immaterial the question of the sufficiency of the description in their lease.

Under the findings of the jury upon the issues of fact, it is our opinion that O'Neil was entitled to recover the land and the proceeds of the oil. This, it seems to us from an examination of the record, accords with the justice and right of the case; and that is what the law of a case ought to be.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the District Court is affirmed.