## TERRY et al. v. BASKIN et al.
### No. 1479—5734.

Commission of Appeals of Texas, Section A.
Jan. 6, 1932.

Neff, Hale & Neff, Jos. W. Hale, and Pat M. Neff, Jr., all of Waco, for plaintiffs in error.

W. A. Morrison, A. J. Lewis, Roy Baskin, and E. A. Wallace, all of Cameron, for defendants in error.

CRITZ, J.

The record in this case discloses the following facts:

J. M. Terry, during his lifetime, owned as his separate property the tract of about 200 acres of land in Milam county, Tex., involved in this suit. J. M. Terry died intestate in 1902. Terry was twice married. The first wife, Josephine Terry, died in 1891. About two years after the death of his first wife, J. M. Terry married Mollie Terry. About the year 1908 Mollie Terry, surviving widow of J. M. Terry, deceased, married one J. T. Maples. Mollie Maples (née Terry) died on December 30, 1927. J. M. Terry lived on, used and occupied the premises here involved with both wives, respectively, until the date of his death, and his surviving widow, Mollie Maples (née Terry), subjected the premises to the same use until the date of her death in 1927.

The record further discloses that at the time of his death J. M. Terry left surviving him as his only heirs at law his surviving wife and eleven children. Six of these children were by the first marriage, and five by the second marriage.

It will thus be seen that at the time of the death of J. M. Terry the title to the land in question here descended and vested in the above heirs at law of J. M. Terry, as follows: Each of the eleven children owned an undivided one-eleventh interest in the land, but this title was burdened with the homestead right of the then Mrs. Mollie Terry, later Mrs. Mollie Maples, to use and occupy the land as a homestead for the balance of her natural life, and with the further fact that such surviving wife took as heir at law of J. M. Terry, deceased, an estate for life of one-third undivided interest in such land. This is undisputed by the record.

The record further discloses that on August 7, 1915, while the conditions were as above stated, and while the second wife was occupying the land as a homestead, as she had a right to do, and while the second wife was living with her second husband, the six children of the first marriage of J. M. Terry, being the plaintiffs in error here, executed and delivered to Morrison & Lewis, attorneys, the following instrument of writing:

"That we, the undersigned, John Terry, Cage Terry, Luther Terry, Charley Terry, Marshall Terry and Alice Terry Gray, joined by her husband, Claude Gray, being the sole surviving heirs at law of J. M. (familiarly known as Jim) Terry, have and by these presents do employ Morrison & Lewis, a firm of Lawyers composed of W. A. Morrison and A. J. Lewis, as our true and lawful attorneys in fact for us and in our name to represent us fully in all respects as we could represent ourselves in the recovery of every claim, real, personal and mixed, that we may have against any and every person whomsoever, arising out of or to which we are entitled by reason of our inheritance from our deceased father, J. M. Terry, above mentioned, or his wife, our mother; said estate is supposed to consist of lands and other personal claims for insurance money, etc., against persons now claiming and in possession of lands to which we think we are entitled, or ought to be entitled by reason of our inheritance, as aforesaid, or otherwise, it being intended hereby to employ said attorneys to recover for us any and all lands situated in Milam County, Texas, to which we may have a claim, whether said claim is disputed or not, to that end and for that purpose, and in consideration of the services already rendered and to be rendered by said attorneys, we have and by these presents do here now sell, assign, convey and set over to said attorneys a full undivided one-half of all of the lands and property to which we may be so entitled and which may be recovered by us or received by us or delivered to us from any person whomsoever so that said attorneys shall equally with us and each of us in whatever may be realized presently or prospectively from any and all claims to real estate or personal property which we are entitled to receive or may be entitled to receive hereafter from the estate of our said deceased father and mother or from either of the same.

"And our said attorneys are here now given

full power and authority to act for us in reference to said property in its recovery and in our name to institute any and all suits as may be necessary and to sign our names and execute all papers that said attorneys may think meet and proper for the advancement of our interest or for the advancement of their interest in the recovery and realization of said property, it being the especial intention hereby to: convey to said attorneys a full undivided one-half of all of the lands to which we may be so entitled and especially to all of said lands which may now be in the possession of one Maples and his wife, who was our father's second wife, and whenever said property shall be recovered or received by us or the possession thereof obtained, then our joint interest in the same shall be equal with said attorneys and no more; and we hereby warrant and forever defend the title to said property herein conveyed to said attorneys, to them and their heirs and assigns forever against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"We further hereby ratify and confirm any and all acts that may be done by our said attorneys in respect to the recovery of any of our said property to all intents and purposes, the same in all respects as if done by ourselves in person.

"But it is distinctly understood that if nothing is realized by us out of any of the estate or property, hereinbefore mentioned, then we are not to owe or be indebted to said attorneys in any sum whatever."

The above instrument was duly acknowledged by all parties thereto as required by law, and was also duly recorded in the deed records of Milam county, Tex., on November 2, 1915, having been filed for record on October 29, 1915.

At the October term, 1915, of the district court of Milam county, Tex., Morrison & Lewis, acting as attorneys for the six children of J. M. Terry, deceased, by his first marriage, being the same parties who signed the instrument of writing above set out, filed a suit against Mollie Maples, surviving wife of J. M. Terry, deceased, and her then husband, J. T. Maples, and also against the five children of J. M. Terry's second marriage. This petition was in three counts. The first count was a simple action in trespass to try title, and prayed judgment for the title and possession of the land in dispute here. The second count alleged that the plaintiffs and defendants were joint owners of the land in question; that the plaintiffs owned an undivided six-elevenths thereof, and the defendants an undivided five-elevenths thereof, and prayed judgment for partition. The third count alleged the decease of J. M. Terry and his first wife, and alleged, in substance, that the plaintiffs and the defendants were the only, heirs at law of J. M. Terry, deceased; that the property above described was the separate property of J. M. Terry, deceased; and that the plaintiffs and defendants all acquired their title by inheritance from J. M. Terry, deceased. It is then alleged that the plaintiffs owned six-elevenths of the land, and that the five children of the second marriage owned five-elevenths. The petition then alleges the remarriage of the second wife to J. T. Maples, and alleges that J. T. Maples had gone into possession of the land, and was then residing thereon and claiming to be the owner thereof; that he was rendering the same in his name for taxes, and attempting to set up and establish an adverse claim to those of the plaintiffs, and that the plaintiffs feared that the said defendant, J. T. Maples, would attempt to perfect title to said land by adverse possession, and that he was attempting to do so. The petition further alleged that such action endangered the title of the plaintiffs, and that they brought such suit in the alternative, in the event it should be held that they were not entitled to recover the possession of said property or have same partitioned, that they have a judgment and decree of the court canceling any pretended claims of the defendant J. T. Maples, and that their title be recognized and established by the judgment of the court. The prayer to this count prayed judgment for the title and possession of the premises, and in the alternative prayed judgment for six-elevenths therein and for a decree of partition.

This petition contains a final alternative prayer, which is as follows: "That if they are not entitled to all such relief before mentioned, then, that they have judgment fixing their title in and to said premises, and for all such other and further relief, general and special, whether specially prayed for herein or not, that may be meet and proper to protect their rights, interests and title in and to said property and their respective interests therein, and for costs of suit and for citation as required by law, and for all of which, they will, as in duty bound, ever pray."

Each of the counts contained in the above petition are in the alternative.

The record does not contain the pleadings of the several defendants in the above suit or any of the evidence heard, but does contain the final decree. This decree discloses that J. T. Maples disclaimed any interest in the land, and judgment was rendered against him on such disclaimer. The judgment then proceeds to find the facts above stated, and adjudges that each of the eleven children are the owners of an undivided one-eleventh interest in the land, but burdens such title with the right of Mrs. Maples (née Terry) to use and occupy the land as a homestead for the balance of her natural life, and with her life estate in an undivided one-third thereof.

After the rendition of this judgment, Bessie Grant, one of the children who owned an undivided one-eleventh interest in this land, joined by her husband of the second marriage, conveyed such interest to A. H. Baskin, one of the plaintiffs in this suit.

After the happening of the above events, it seems that the defendants in this suit remained in possession of the land here involved until the instant suit was filed. In this connection it appears that Mrs. Maples (née Terry) occupied the premises as a homestead until her death in 1927, and the eleven heirs and their heirs have been in possession since such time, except it will be noted that the title of A. H. Baskin seems to have at all times been recognized, and Bessie Grant and her husband claim no interest or title in the land.

On December 10, 1928, which was after the death of Mrs. Maples (née Terry), this suit was instituted by W. A. Morrison and A. J. Lewis, who compose the law firm of Morrison & Lewis, and A. H. Baskin against the heirs of J. M. Terry, deceased, and some other parties not necessary to mention here. This petition alleges that Morrison & Lewis own an undivided one-half of six-elevenths of such land; such interest being held in the proportion of three-fourths to Morrison and one-fourth to Lewis, and that A. H. Baskin owns an undivided one-eleventh thereof. The petition then alleges the interests owned by the several heirs of J. M. Terry, deceased, and their heirs, and prays for partition. The petition contains other matters and averments not germane to this opinion. The petition states that the deed from Bessie Grant and husband to A. H. Baskin, the power of attorney and conveyance from John Terry et al. to Morrison & Lewis, above set out, and the judgment entered in the suit filed by Morrison & Lewis on behalf of John Terry et al. above discussed, are title papers in this case, and are filed as such by the plaintiffs.

The defendants who did not execute the above power of attorney answered, but we do not consider it necessary to further notice such answer.

The defendants who executed the power of attorney and conveyance to Morrison & Lewis answered by general demurrer and general denial. Also they specially answered and admitted the title of A. H. Baskin. Such defendants then further specially answered and pleaded that the power of attorney and conveyance from them to Morrison & Lewis was procured by fraud on the part of the plaintiff, Morrison. Said defense of fraud is fully pleaded in the answer, but we do not deem it necessary to set out in detail the allegations; it is sufficient to say that such allegations, if true, constitute valid grounds on which to render the power of attorney and conveyance inoperative and void as between the grantors and grantees.

Morrison & Lewis filed reply to the answer of the defendants, which reply contained many special exceptions to the defendants' special answer of fraud. These special exceptions, among other things, excepted to the special answer on the ground that the relief sought by defendants was barred by limitation. The trial court sustained these exceptions. The case was then tried and judgment entered awarding plaintiffs, Morrison & Lewis, the interest in the land asserted by them. The judgment disposed of all other parties and issues in the case. On appeal by the defendants who executed the power of attorney and conveyance, this judgment was affirmed by the Court of Civil Appeals. 27 S.W.(2d) 857. The case is in the Supreme Court on writ of error granted on application of the defendants who executed the power of attorney and conveyance.

The Court of Civil Appeals holds that the power of attorney and conveyance to Morrison & Lewis conveys a present interest; but that court further holds that, if such power of attorney does not operate to convey a present interest, it was fully performed by Morrison & Lewis when they filed the suit on behalf of defendants and obtained the judgment above described. We do not deem it necessary to pass on these questions, as in our opinion the final result of this case must turn on the issues of fraud contained in the defendants' answer. If the allegations of fraud are found in defendants' favor, then they have established a bar to the right of Morrison & Lewis to recover, and that regardless of whether the instrument conveyed a present interest or became executed by performance of the conditions thereof; if defendants fail to establish such alleged fraud, then Morrison & Lewis are entitled to recover.

The Court of Civil Appeals holds that the title held by Morrison & Lewis, by virtue of the power of attorney and conveyance to them, can only be voided by a suit brought by defendants to cancel such instrument before they can recover the land, and that the allegations of fraud contained in defendants' answer, and the prayer for cancellation and annulment of the power of attorney and conveyance, constitute the defendants' answer an action for affirmative relief, and that such action is therefore barred by the four-year statute of limitation, citing Deaton v. Rush, 113 Tex. 193, 252 S. W. 1025.

We think the Court of Civil Appeals is in error in the above holding, and further is in error in holding that the issues of limitation involved in the present suit are determined by the rule announced in Deaton v. Rush, supra. In that case the grantor was attempting to recover from his grantee in possession by virtue of the grant, and it was very correctly held that a vendor having an equitable right

to rescind and cancel a conveyance for fraud could not maintain a suit for the recovery of the land from his vendee in possession without the cancellation of the deed, though he may have judgment for such cancellation, and, as an incident thereto, for the recovery of the land in the same suit. Of course, in such a case, if the right to cancel the conveyance is barred by limitation, no recovery of the land can be had; this for the simple reason that it is absolutely necessary to cancel the conveyance before the land can be recovered.

As disclosed by the pleadings, we are confronted with very different conditions in the instant case from the conditions in Deaton v. Rush. In the instant case, the defendants are in possession of the land, and the plaintiffs, Morrison & Lewis, are seeking to oust them of such possession by means of a suit for partition and sale through a receiver. Morrison & Lewis in effect pleaded the power of attorney and conveyance to them as the basis of their asserted rights. Defendants pleaded as a defense to the right of Morrison & Lewis to recover that such power of attorney and conveyance was procured by fraud, and is therefore void. In this condition of the record, no statute of limitation bars the defense. Newsom v. Davis, 20 Tex. 419; Rutherford v. Carr, 99 Tex. 101, 87 S. W. 815, 817; Gilmore v. O'Neil, 107 Tex. 18, 173 S. W. 203, 207; Mason v. Peterson (Tex. Civ. App.) 232 S. W. 567; Id. (Tex. Com. App.) 250 S. W. 142 (opinion approved); Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304, 309, 255 S. W. 601.

In Newsom v. Davis, supra, which involved the rights of the defendant in possession of land under a bond for title, our Supreme Court, speaking through Judge Wheeler, said: "The defendant being in possession under a contract to convey, and having paid the consideration, is the equitable owner of the land. His is superior to the legal title remaining in his vendor; and there being no possession adverse to his right, the statute of limitations does not run against it (Vardeman v. Lawson, 17 Tex. 10)."

In Rutherford v. Carr, supra, our Supreme Court, speaking through Judge Brown, thus announces the rule: "There is no statute of limitation which prescribes a bar to the proof of a fact material to sustain or defeat a cause of action. or defense. Such statutes act upon the cause of action. In this case the statute of limitation of four years was invoked to sustain a void deed as a defense against a cause of action not itself barred. In Amaker v. New [33 S. C. 28], 11 S. E. 386, 8 L. R. A. 687, the Supreme Court of South Carolina said: 'There never was, therefore, any occasion for the creditor to bring his action to set aside the deed for fraud (and such is not the nature of the present action), for he had availed himself of the other remedy afforded by law, by selling the land under his

execution as the property of the grantor, notwithstanding the prior execution of the voluntary deed. * * * The plea of the statute, as it is called (improperly, as I think, for such a plea must be directed to the cause of action set forth in the complaint), is not directed to the plaintiff's cause of action, but is interposed as a protection against an attack made by the plaintiff upon the defense set up by defendants. * * * I do not understand that it ever was the rule that a deed or other instrument could not be attacked for fraud after the lapse of the prescribed time, in any way, but only that it could not be attacked by an action instituted for that purpose. I can very well understand how the law, from consideration of public policy, may forbid one from invoking its aid by bringing an action to set aside a deed for fraud after the time limited for the purpose; but I am unable to understand upon what principle, either of law, equity, or good morals, one who has made out a prima facie case for the relief he demands can be forbidden from showing that the defense set up against his claim is founded in fraud, simply because such fraud had been committed so long ago as to bar an action brought to obtain relief from such fraud; but I do not think any case can be found which would sanction such a doctrine.' That language is pertinent to this case. A fair analysis of this judgment may be thus stated: The plaintiffs have the legal title to the land, but the defendant, who cannot sustain limitation against the right to recover the land, thwarted an attack upon his void deed by pleading limitation that would be a bar to a suit which plaintiffs did not institute. The judgment cannot be sustained."

In Gilmore v. O'Neil, supra, our Supreme Court, speaking through Judge Phillips, quoted with approval the holding in the Newsom Case, and expressly holds that, where in trespass to try title a defendant sets up an equitable title to the land, the fact that he asked for a removal of the cloud cast on his title by the claims of plaintiffs and intervener did not convert his claim or defense into an affirmative action subject to limitation.

We quote the following from the opinion in the Gilmore Case: "O'Neil's pleading recited the facts, substantially as we have stated them, and as the jury found them, the effect of which was to invest him with a superior equitable title to the land, and reveals that, upon such a title and notice of the equity by the plaintiffs in the acquisition of their rights, his defense to their suit was rested. His prayer for the removal of the cloud upon his title, cast by the claims of the plaintiffs and interveners, did not alter the character of his defense, or convert it into an affirmative action subject to limitation. If his was the superior title and capable of enforcement against the legal title, his right to be quieted in it would follow. Asserting, as he was, a

superior equitable title, independent of the deed of Jones and wife to Mrs. Duey, as the basis of his defense, in what way was the reformation of that deed essential to the establishment of his defense? With no possession adverse to his right, how could limitation affect his right? It is not the law, and could not well be the law, that, in a trespass to try title action, proof of an equitable title by a defendant in possession is subject to limitation."

In Mason v. Peterson, supra, which is expressly approved by the Supreme Court, the Commission of Appeals, speaking through Judge McClendon, expressly held that fraud or mistake enters into and vitiates a contract for the sale and purchase of real estate to the extent of the resultant injury, and is a defense available to the purchaser in a suit on his obligation, and, where he seeks relief only by way of defense to defeat in whole or in part the obligation for the purchase, his defense is not affected by the statute of limitation.

In Texas Co. et al. v. Davis, et al., supra, it is shown that Davis et al. sued Texas Company et al. to recover the oil, gas, and other minerals, with appurtenant surface rights, in a certain tract of land in Brazoria county, Tex., subject to royalties. Texas Company et al. filed answers containing pleas of not guilty, and certain special pleas, and also filed a cross-action seeking cancellation of the instruments under which Davis et al. claimed. Davis et al. pleaded limitation of four years in bar of the cross-action. The other facts are set out in the opinion. In passing on the issue of limitation as applied to the cross-action, our Supreme Court, speaking through Judge Greenwood, said: "Limitation has not barred the cross-action of plaintiffs in error to remove the cloud cast on their titles by the claim of defendants in error. Such claim seems to have arisen within four years next preceding the filing of the cross-action. Moreover, we prefer to follow the rule, which appears to be sustained by the weight of authority, that since the injury from a cloud on the title to real estate is continuing the cause of action for its removal is likewise continuing, and never barred while the cloud exists. Pannell v. Askew (Tex. Civ. App.) 143 S. W. 364; Cooper v. Rhea, 82 Kan. 109, 107 P. 799, 29 L. R. A. (N. S.) 930, 136 Am. St. Rep. 100, 20 Ann. Cas. 42; Miner v. Beekman, 50 N. Y. 337; 17 R. C. L. § 71, p. 715."

From what we have said it is evident that we hold that the defendants' special answer of fraud alleges a defense to the cause of action asserted by the plaintiffs Morrison & Lewis, and that such defense is not barred by any statute of limitation. Of course, we do not want to be understood as holding that fraud has been established. We are merely passing on the answer, and hold that it as-

serts a defense not barred by any statute of limitation.

We therefore recommend that the judgments of the Court of Civil Appeals and the district court be both reversed, and the cause remanded to the district court for a new trial.

CURETON, C. J.

Judgments of the Court of Civil Appeals and the district court both reversed, and the cause remanded for another trial, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.