IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00313-CR

 

Billy Dean Walker, Jr.,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 



From the 54th District Court

McLennan County, Texas

Trial Court No. 2002-1076-C

 



CONCURRING Opinion










 

          The majority[1]
acknowledges in footnote 1 that their discussion of the Interstate Agreement on
Detainers Act is irrelevant dicta.  Nevertheless, they include it anyway.  Not
only is the discussion under the headings “The Detainer was ‘Lodged’ Against
Walker,” and “Walker Complied With the IADA [Interstate Agreement on Detainers
Act]” dicta, but it is also wrong.  It is wrong because there was no issue as
to the sufficiency of Walker’s “proof.”  Walker’s “proof” was not an issue because
a motion to obtain the benefits of the IADA was never filed by Walker.  Since a motion was never filed, the issue was never joined between Walker and the State.  Because the issue was never joined, there is no evidence upon which
the trial court, or this Court, could properly make the required findings.  In
short, application of the IADA was never raised; accordingly, Walker forfeited
the ability to complain about the failure to dismiss the indictment on that
basis.

          While there is not much Texas authority, there is a wealth of federal and other state authority which we can
utilize.  See State v. Sephus, 32 S.W.3d 369, 374-383 (Tex. App.—Waco
2000, pet. ref’d) (Gray, J., dissenting).  Basically, the majority does not
like what has been written and wants to create its own authority to use in the
future.  I have no doubt that the majority will.

          This Court has historically had a
problem in distinguishing that discussion which is necessary for a disposition
of the appeal on the issues presented.  Kelly v. State, 151 S.W.3d 683,
687 (Tex. App.—Waco 2004, no pet.) (Gray, C.J., concurring).  Frequently, its
inclusion does not present a problem with the ultimate result and may help to satisfy
a need for self-aggrandizement.  (If the lead opinion can use “elucidating,”
surely I am entitled to use “self-aggrandizement.”).  With these comments, I
concur in the judgment of the Court.

 

                                                          TOM
GRAY

                                                          Chief
Justice

 

Concurring
opinion delivered and filed on July 19, 2006

Publish









[1]
Justice Reyna is the author of the lead
opinion joined by Justice Vance’s dissenting opinion.








s=MsoNormal style='text-align:justify;line-height:200%'>In 1966, a General Commentary was added to Rule
1.  The text of the commentary was, for the most part, from law review articles
of the period when the rules were first adopted.  That text in its entirety is
as follows:

General Commentary – 1966

 

     Following are excerpts from Hutcheson,
Federal v. State Rules, 4 Texas B.J. 459 (1941):

     “* * * the prime consideration in making, and
in the administration of, any set of modern procedural rules is function not
method, that method shall be the servant, function the master.  What is important
is the ends which the drafters had in mind accomplishing, and the spirit toward
the accomplishment of those ends which breathes in and through them.

     “Whatever may have been the case in earlier
times, a study of bar association proceedings, law journals, treatises,
articles by lawyers, judges and teachers, for many years past, will convince
that we are all now in agreement with the view thus expressed by Roy McDonald
[The Background of the Texas Procedural Rules, 19 Texas L.Rev. at 229 (1941)].

     “It is essential that we agree upon a
statement of the end value of civil procedure * * * the aim of civil procedure
is to provide an organized forum for the orderly adjudication of controversies
between parties and to provide for such tribunal rules of operation (a) which
will develop as completely as possible within the human limitations of the
society in which the court operates, a complete knowledge of all the facts
which created friction; and (b) which will assist in the evaluation of such
events from the standpoint of justice and the awarding of such consequences as
accord with the maximum feasible conceptions of justice in the conditioning
society.

     “Any procedural device or rule therefore,
which impedes the investigation or the evaluation of the facts or the awarding
of the just consequences thereon, is incompatible with an ideal procedure.  No
mere rule of procedural form or courtesy should be allowed to delay or control
the disposition of the litigation upon its merits.

     “No judgment should ever be rendered in the
trial court which is based upon mere procedural technicalities and no judgment
which follows a full and otherwise correct trial upon the actual issues in
controversy between the parties, should ever be reversed because of such informalities. 
There is no vested right in rules of procedure; much less is there any vested
right in procedural errors.’

     “These abstractions will be admitted by all
to be true as far as they go, to be necessary postulates on which the
administration of justice in the courts should proceed.  But it is dangerous to
generalize thus, unless there is full recognition that such generalization does
not mean that procedural rules are of no intrinsic value and that they are
written but to be disobeyed.  The contrary is true of any set of good
procedural rules and of any good administration under them.  Procedural rules
are the manners of the law and they are expected to be observed.”

     Following are excerpts from Vinson, Federal
and Texas Rules of Appellate Procedure–a Comparison, 20 Texas L.Rev. 46 (1941):

     “* * * The declared purpose of the rules in
both systems is ‘to secure the just, speedy, and inexpensive determination of
every action,’ and to that end a Texas rule specifically provides that they
‘shall be given a liberal construction.’  The success of the rules, and the
attainment of the desired ends, depend upon the intelligent and whole-hearted
co-operation of the bar, and their administration by efficient, competent and
impartial judges ‘without which codes merely add to an accumulation of legal
futilities.’  

* * *

     “The responsibility of the bench and bar in
the enforcement of the rules is mutual and reciprocal.  When it is realized and
acknowledged that procedural methods are but aids to the orderly administration
of justice, and are not ‘the thing’ to be tried, it will mark the dawning of a
new day.  A trial should not be permitted to degenerate into a joust between
counsel on mere maters of procedure.  While the rules are not to be flouted, their
importance should not be unduly magnified or made to overshadow or obscure the
merits of the controversy.  They should not be applied to defeat ‘the justice
and right of the case’ which Judge Phillips said in Gilmore v. O’Neil, 107 Tex. 18, 173 S.W. 203, 1915, was ‘what the law of a case ought to be.’  The human factor
must be given fair play, however, and rigid enforcement is neither within the
letter nor the spirit of the rules.  If a violation of a rule has not affected,
or deprived a party of, a substantial right, it should be disregarded or a
correction allowed.  It is hoped that the appellate courts will not deem it to
be their duty to devote the major part of their opinions to explaining and
construing the rules.  Reversals for procedural defects should not be allowed
except where they are necessary to prevent manifest injustice.   * * *

     “The rules are entitled to an honest and
conscientious trial.  If the bench and bar will grasp their spirit, and
co-operate in their application, they will, without doubt, view the result with
satisfaction, and experience the sense of pride which comes with the
accomplishment of a thing worthwhile.”

 

            And although these were the Rules of
Civil Procedure, as indicated above, this rule and these comments were from a
time when the Rules of Appellate Procedure were included therein.  In fact, the
“Opinions of Subcommittee on Interpretation of Rules” specifically addressed
appeals as follows:

Opinions of Subcommittee on

Interpretation of Rules

 

     [With respect to appeals] the policy of the
Rules is not to punish missteps and changes of plan but to reach the merits of
appeals.  5 Texas B.J. 427 (1942), 8 Texas B.J. 26 (1945).

     Rule 1 requires that liberal construction be
given to all the rules in order to adjudicate “the rights of litigants under
established principles of substantive law.”  5 Texas B.J. 426 (1942), 7 Texas B.J. 152 (1944), 8 Texas B.J. 24, 46, 221 (1945).

     Rules should be so construed as to attain
real justice between the parties.  6 Texas B.J. 20 (1943), 8 Texas B.J. 30
(1945).

     The purpose and intention of the new Rules is
to obtain justice.  5 Texas B.J. 168 (1942), 8 Texas B.J. 12 (1945).

     The Statutes and Rules giving “precedence” to
certain types of cases do not mean that the court can transact no other
business until all such cases pending on the docket are disposed of.  Such
Statutes and Rules should be given a reasonable construction and a construction
calculated to attain justice; and therefore where the application of the exact
wording in regard to giving certain cases precedence would result in injustice
it is within the discretion of the court to relax the requirements sufficiently
to avoid such injustice.  6 Texas B.J. 550 (1943), 8 Texas B.J. 38 (1945).

 

            Thus, the drafters of the rules, as
well as commentators and scholars from the beginning, recognized that there was
a need for balance.  A rule that was enforced at the risk of jeopardizing
“justice” was a problem.  But likewise, a rule that by its design is to be
applied to all, when not enforced in a particular case, threatens to undermine
the equality of justice for which we must strive.  We cannot, in the name of
justice, abandon the consistent application of the rule.  For it is the
consistent application of the rule that makes the law equal to all similarly
situated litigants.  And it is the consistent application of the rule that
gives the law its predictability.  And it is the predictability of the law that
allows each person to know what result will be obtained on a certain set of
facts such that they need not test the law repeatedly to see if their roll of
the die will yield a different result.  In this way, precedent, or stare
decisis, is absolutely critical to the efficient operation of our judicial
system.

            And to be able to follow precedent,
stare decisis, we must carefully articulate, as a Court, the justification for
any departure from the application of the rules.  By a clear articulation of
why a rule is not being enforced, a court creates exceptions to the application
of the rules.  And the court should be expected to apply the exception as
consistently as it does the rule.

            But if a court fails to define,
describe, or explain the circumstances in which the exception is applied, then
there is no guide; without a guide, there is no consistency; without
consistency, there is no predictability; and without predictability, there is
chaos.  Where there is chaos, there is uncertainty; and it is expensive to
bring order and certainty from chaos.

            Thus, consistent application of the
rules leads to efficiency.  Efficiency leads to speed.  And in many situations,
the speed of the system of justice can be its greatest attribute, but only if
we ultimately get the answer right for the right reason.

            With the objective of balancing the need for speed and the need for consistent application of both the rules and the
exceptions thereto, I now turn to the Court’s failure to apply the rules to
this proceeding, and its corresponding failure to articulate whether it is
creating an exception, applying an existing exception, or simply ignoring the
system to proceed to a result.

The Fee

            “At this Court, our clerk files
everything tendered for filing and tries to collect the fees later if they are
not paid at the time of filing.  This is a matter of convenience because we do
not have a way to keep track of pleadings that remain unfiled because the
filing fee has not been paid.  Our system has created its own set of problems. 
Just a few of those problems are (1) the clerk must act as a collection agent
for our Court, (2) there is a different treatment by justices if the fee
remains unpaid, and (3) the need to write off uncollected filing fees.”  In
re Lewis, 185 S.W.3d 615, 620 (Tex. App.—Waco 2006, orig. proceeding)
(Gray, C.J., dissenting) (footnote omitted).

            But notwithstanding the issue of
convenience, “[a]bsent a specific exemption, the Clerk of the Court must
collect filing fees at the time a document is presented for filing.  Tex. R. App. P. 12.1(b); Appendix to Tex. R. App. P., Order Regarding Fees
(July 21, 1998); see also Tex. R.
App. P. 5; 10th Tex. App. (Waco) Loc. R. 6; Tex. Gov’t Code Ann.
§§ 51.207(b), 51.901 (Vernon 2005).”  In re Reyes, 195 S.W.3d 127, 128
(Tex. App.—Waco 2005, orig. proceeding).  See also Watkins v. State, 226
S.W.3d 737, 739 (Tex. App.—Waco 2007, order).

            To the extent necessary and under some
circumstances, we suspend the rule and order the Clerk to write off all filing
fees in a case.  Tex. R. App. P.
2; see In re Williamson, No. 10-07-00032-CV, 2007 Tex. App. LEXIS 1217 (Tex. App.—Waco Feb. 14, 2007, orig. proceeding) (mem. op.).

            Smith did not pay the filing fee for
his petition for writ of mandamus.  We should not continue in this proceeding
until the issue of payment of the filing fee is resolved.  If Smith is
indigent, Rule 20 is available to allow him to proceed without the advance
payment of costs.  Tex. R. App. P.
20.1.  Even though that rule appears on its face to require the filing of an indigence
affidavit at the time the proceeding is filed, the Texas Supreme Court has made
it clear that a late filed indigence affidavit must be considered.  See Springer
v. Springer, 240 S.W.3d 871 (Tex. 2007); Hood v. Wal-Mart Stores, Inc.,
216 S.W.3d 829, 830 (Tex. 2007); Higgins v. Randall County Sheriff's Office,
193 S.W.3d 898 (Tex. 2006).

            You will note that this duty to
collect the filing fee is assigned to the Clerk.  See Tex. R. App. P. 12.1(b).  We should
allow, indeed we should demand, that the Clerk comply with her duty and not
interfere with or impede her ability to do so.  When the Court recognizes that
this situation is presented, we should notify the Clerk of this procedural
problem and allow her to resolve it before proceeding.  Instead, the Court
controlled all aspects of the indigence determination and thus unnecessarily
expended its resources thereon.

Proof of Service

            All documents presented for filing
must be served on the opposing parties and the document must contain proof of
service.  Specifically, Rule 9.5(a) provides:

     (a) Service of All Documents Required. 
At or before the time of a document’s filing, the filing party must serve a
copy on all parties to the proceeding.  But a party need not serve a copy of
the record.

 

Tex. R. App. P.
9.5(a).  And Rule 9.5(d) provides:

 

     (d) Proof of Service.  A document
presented for filing must contain a proof of service in the form of either an
acknowledgement of service by the person served or a certificate of service. 
Proof of service may appear on or be affixed to the filed document.  The clerk
may permit a document to be filed without proof of service, but will require
the proof to be filed promptly.

 

Tex. R. App. P. 9.5(d).

            To determine who must be served with a
petition for writ of mandamus as “a party to the proceeding,” we must turn to
Rule 52.2 which designates the identities, including the label, for each party
to the proceeding.

     The party seeking the relief is the relator. 
In original proceedings other than habeas corpus, the person against whom
relief is sought—whether a judge, court, tribunal, officer, or other person—is
the respondent.  A person whose interest would be directly affected by the
relief sought is a real party in interest and a party to the case.

 

Tex. R. App. P. 52.2.  In this proceeding, Smith is the relator,
Walker County District Clerk, Robyn Flowers, is the respondent, and Brad
Livingston, et al., are the real parties in interest.

            However, when we turn to the proof of
service included in the petition, we find that the real parties in interest
have not been served.  The Certificate of Service is as follows:




Certificate of Service

 

            I certify that a true and correct copy
of the foregoing Application for Writ of Mandamus minus some of the exhibits
has been sent to the District Clerk of Walker County:

                                                Roybn
(sic) Flowers

                                                1100 University Ave, Ste. 209

                                                Huntsville, Tx. 77349

 

            Mailed U.S. Mail on July 18th,
2008 (provided R. Quada L.L. Supervisor and indigent supplies designate for the
Wynne Unit will mail this).

 

                                                                      
Clifford Allen Smith

 

            I would not proceed until all parties
have been properly served.  How can we expect the real party in interest to
effectively participate if the party was not served with a copy of the
petition?  I will address Smith’s express failure to serve all the exhibits
under the heading “Appendix.”

            You will note that this duty to file
only documents with a proof of service or to require the prompt proof thereof
is assigned to the Clerk.  See Tex.
R. App. P. 9.5(d).  We should allow, indeed we should demand, that the
Clerk comply with her duty and not interfere with or impede her ability to do
so.  I would notify the Clerk of this procedural problem and allow her to
resolve it.

Form and Contents

            The Rules of Appellate Procedure
specify the form and contents of the petition.  Tex. R. App. P. 52.3.  The rule provides that the “petition
must, under appropriate headings and in the order here indicated, contain the
following:  

            (a) 
Identity of Parties and Counsel. . . .

            (b) 
Table of Contents. . . .

            (c) 
Index of Authorities. . . .

            (d)
Statement of the Case. . . . 

            (e) 
Statement of Jurisdiction. . . . 

            (f) 
Issues Presented. . . . 

            (g) 
Statement of Facts. . . .

            (h) 
Argument. . . .

            (i) 
Prayer. . . . 

            (j) 
Appendix. . . .

 

Tex. R. App. P. 52.3

            The required items not included
in Smith’s petition are:

1.     
Identity of Parties and
Counsel – needed so that the
members of the Court may properly consider disqualification and recusal issues;

2.     
Table of Contents;

3.     
Index of Authorities – however, only one authority is cited in the
entire petition;

4.     
Statement of the Case – this is simply interspersed with the issues
presented, statement of facts, and argument;

5.     
Statement of Jurisdiction – which in this case is a central issue since Smith
is attempting to obtain a mandamus against a district clerk;

6.     
Issues Presented – this item, when properly set out, helps the
Court focus on the precise issue it is being asked to decide.  Here, it is
jumbled together with the statement of the case, statement of facts and
argument;

7.     
Statement of Facts – see Issues Presented; and

8.     
Argument – see Issues Presented.

 

See id.

            Notwithstanding the horrible deviation
from the required contents, we are able to discern, to some extent, Smith’s
complaint, the details of which will be more fully discussed below.  Because we
are required to give a pro se litigant some latitude in their pleadings, I
would not endeavor to obtain any clarification of these procedural deficits.  See
Pena v. McDowell, 201 S.W.3d 665, 667 (Tex. 2006); Wheeler v. Green,
157 S.W.3d 439, 444 (Tex. 2005); Baughman v. Baughman, 65 S.W.3d 309,
312 (Tex. App.—Waco 2001, pet. denied); Tex.
R. App. P. 38.9.  Because the issue in this proceeding is so narrow, we
are not giving the pro se party a procedural advantage by foregoing strict
compliance with the rules regarding the contents of the petition.

Verification

            Smith’s verification is defective. 
Rule 52.3 states:

52.3.   Form and Contents of Petition

     All factual statements in the petition must
be verified by affidavit made on personal knowledge by an affiant competent to
testify to the matters stated.

 

Tex. R. App. P. 52.3.  

 

            Smith’s verification is as follows:

 

     I verify that the information contained in
this Application for Writ of Mandamus is true and correct to the best of my
knowledge.

     Signed July 17th, 2008.

 

                                                                        Clifford
Allen Smith

 

            It has been frequently stated that a
verification that does not expressly state that the facts are based on personal
knowledge such that perjury can be assigned upon it is inadequate as a verification. 
Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984); Burke v.
Satterfield, 525 S.W.2d 950, 954-55 (Tex. 1975).  Because Smith’s affidavit
is not based on personal knowledge, but rather upon only “the best of [his]
knowledge,” it is not adequate.

            Further, because inmates do not
ordinarily have access to a notary public, the Legislature has specified the
precise form to be used by an inmate as a substitute when a verification is
required of an inmate.  Tex. Civ. Prac. &
 Rem. Code Ann. § 132.001 (Vernon 2005).  The requirements of the
declaration are described in section 132.002 and section 132.003 provides the
specific language to be used as follows:

§ 132.003.  Form of Declaration

   The form of a declaration under this chapter
must be substantially as follows:

            “I, (insert name and inmate
identifying number from Texas Department of Corrections or county jail), being
presently incarcerated in (insert Texas Department of Corrections unit name or
county jail name) in _____________ County, Texas, declare under penalty of
perjury that the foregoing is true and correct.  Executed on (date). 
(signature)”

 

Id. § 132.003.  Smith’s affidavit clearly fails to
comply with the statutory alternative for inmates.

            This is both a substantive and
procedural problem.  We should notify Smith of this defect and if it is not
corrected, deny the petition.  We should not grant relief upon this defective
verification.

Appendix

            The petition does contain a section
denominated as an Appendix, but it does not contain the necessary contents of
the appendix.  See Tex. R. App.
P. 52.3(j).  I have previously lamented this Court’s inconsistent
enforcement of the requirements for the necessary contents of an appendix.  Steele
v. McDonald, 195 S.W.3d 349 (Tex. App.—Waco 2006) (concurring opinion to
letter order).  As recently as October 28, 2008, this Court has threatened to strike a brief because it failed to contain the necessary appendix.  Rutledge
v. Leonard, 10-07-00376-CV (Tex. App.—Waco, Oct. 28, 2008) (unpublished letter order).

            The necessary contents of the appendix
are set out in Texas Rule of Appellate Procedure 52.3(j).  It provides:

(j)  Appendix.

     (1)     Necessary
Contents.  The appendix must contain:

            (A)   a certified or sworn
copy of any order complained of, or any other document showing the matter
complained of; 

            (B)   any order or opinion
of the court of appeals, if the petition is filed in the Supreme Court;

            (C)   unless voluminous or
impracticable, the text of any rule, regulation, ordinance, statute, constitutional
provision, or other law (excluding case law) on which the argument is based;
and

            (D)   if a writ of habeas
corpus is sought, proof that the relator is being restrained. 

    (2)     Optional Contents.
 The appendix may contain any other item pertinent to the issues or points
presented for review, including copies or excerpts of relevant court opinions,
statutes, constitutional provisions, documents on which the suit was based,
pleadings, and similar material.  Items should not be included in the
appendix to attempt to avoid the page limits for the petition.  The
appendix should not contain any evidence or other item that is not necessary
for a decision.

 

Tex. R. App. P. 52.3(j).  

            The contents in the appendix appear to
be those required by Texas Rule of Appellate Procedure 52.3(j)(1)(A).  But the
contents in the appendix are not certified copies.  This problem is more
significant in this proceeding because, as discussed below, the appendix is
substituting for the record.  Further, even if the defects in the verification
to the petition are ignored, the contents to the appendix are not sworn to
because they are not included by reference in the verification nor are they
incorporated into the petition for all purposes.  For this reason, the contents
of the appendix cannot be relied upon.  Further, the proof of service expressly
states that some of the appendix was not served on the Respondent.

            I would notify Smith of this problem
and resolve it before continuing.

Record

            In addition to the petition, the
relator must file a record.  Tex. R.
App. P. 52.7.  The Rule provides:

52.7.  Record

    (a)    Filing by Relator
Required.  Relator must file with the petition:

            (1)     a
certified or sworn copy of every document that is material to the relator's claim
for relief and that was filed in any underlying proceeding; and

            (2)    a properly
authenticated transcript of any relevant testimony from any underlying
proceeding, including any exhibits offered in evidence, or a statement that no
testimony was adduced in connection with the matter complained.

    (b)    Supplementation
Permitted.  After the record is filed, relator or any other party to the
proceeding may file additional materials for inclusion in the record.

    (c)     Service of
Record on All Parties.  Relator and any party who files materials for
inclusion in the record must—at the same time—serve on each party:

            (1)     those
materials not previously served on that party as part of the record in another
original appellate proceeding in the same or another court; and

            (2)     an index
listing the materials filed and describing them in sufficient detail to
identify them.

 

Tex. R. App. P. 52.7.  No separate record has been filed.  It
appears, however, that the appendix might contain the only documents upon which
Smith relied.

            If the only documents being relied
upon were attached to the petition as an appendix, served with the petition, and
were properly sworn to or verified as part of the petition, I would not find the
record to be a deficiency that needed to be corrected.  The problem in this
instance is that, as mentioned above, the proof of service affirmatively
demonstrates that the appendix served on the respondent did not contain all the
contents of the appendix filed with the Court.  Thus, a complete and adequate
record has not been served on the respondent.  Further, as previously stated,
nothing at all has been served on the real party in interest.  Finally, as
mentioned above, the contents of the appendix are not properly verified and,
therefore, cannot serve as a proper record.

            I would notify Smith of this problem
and resolve it before continuing.

Merit Review

            Having systematically covered the many
problems of the form and content of Smith’s petition, I now turn to the lack of
merit for his petition and the substantive problems lurking therein.  Smith’s
fundamental argument is that because he was told by a deputy district clerk
that he would not be allowed to file anything else in the Walker County
District Clerk’s Office because his suit had been dismissed as frivolous, he
filed his notice of appeal with the appellate court clerk for the Houston Court
of Appeals.  It was assigned to the First Court of Appeals.

            Smith wanted to appeal the trial
court’s determination that his suit was frivolous.  He asserts that order is an
appealable order.  The notice of appeal was received and filed on June 13, 2008 by the First Court of Appeals in Houston.  He claims that on July 14, 2008, he learned that his appeal had not been docketed and was being returned to
him.

            Smith then sent his Petition for Writ
of Mandamus to the Houston Courts of Appeals.  The copy he filed with us
reflects a “Received” stamp of July 25, 2008 by the First Court of Appeals and a “Filed” stamp of July 28, 2008 by the Fourteenth Court of Appeals that has been marked through.

            “Mandamus issues only to correct a
clear abuse of discretion or the violation of a duty imposed by law when there
is no other adequate remedy by law."  Johnson v. Fourth Court of
Appeals, 700 S.W.2d 916, 917 (Tex. 1985).  Traditionally, the writ of
mandamus issued only to compel the performance of a ministerial act or duty.  Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992).  Since the 1950's,
however, the Texas Supreme Court has used the writ to correct a "clear
abuse of discretion" committed by the trial court.  Id.  A trial
court clearly abuses its discretion if "it reaches a decision so arbitrary
and unreasonable as to amount to a clear and prejudicial error of law."  Id. (quoting Johnson v. Fourth Court of Appeals, 700 S.W.2d at 917).   Further,
mandamus will not issue where there is "a clear and adequate remedy at
law, such as a normal appeal." Id. at 840 (quoting State v.
Walker, 679 S.W.2d 484, 485 (Tex. 1984)).  Mandamus is intended to be an
extraordinary remedy, available only in limited circumstances.  Id.  The writ will issue "only in situations involving manifest and urgent
necessity and not for grievances that may be addressed by other remedies."
 Id. (quoting Holloway v. Fifth Court of Appeals, 767 S.W.2d 680,
684 (Tex. 1989)). 

            Mandamus against a district clerk is
appropriate if the acts of the district clerk interfere with this Court’s
jurisdiction.  See Tex. Gov't
Code Ann. § 22.221(a), (b) (Vernon 2004).  Smith has not shown that the
district clerk failed or refused to file Smith’s notice of appeal.  He does not
even contend that he ever presented his notice of appeal to the district clerk
for filing.  Actually, based upon the petition, it is very clear that Smith
never gave the district clerk the opportunity to file the notice of appeal.  

            The Amarillo Court succinctly
addressed a similar problem.

Simply put, before mandamus relief may issue, the
petitioner must establish that the district court 1) had a legal duty to
perform a non-discretionary act, 2) was asked to perform the act, and 3) failed
or refused to do it.  O’Connor v. First Court of Appeals, 837 S.W.2d 94,
97 (Tex. 1992); In re Chavez, 62 S.W.3d 225, 228 (Tex. App.—Amarillo
2001, orig. proceeding).  Given this, it is encumbent upon Minnfee to
illustrate that the district court received and was aware of his motion.  This
is so because a court cannot be faulted for doing nothing when it is or was
unaware of the need to act.  Here, Minnfee states in his petition that he
“directed” the motion to the district court on June 9, 2008, but whether the court was ever made aware of it is unknown.  Lacking that information, we cannot
simply assume that the district court knew of its duty to act and neglected to
perform it.  Thus, Minnfee has not fulfilled his burden to illustrate that the
trial court refused to act.  

 

Accordingly, the application for writ of mandamus
pending before this court is denied.  

 

In re Minnfee, No. 07-08-0416-CV, 2008 Tex. App. LEXIS 7982 (Tex. App.—Amarillo Oct. 21, 2008, orig. proceeding).

            In this proceeding, Smith never gave
the district clerk of Walker County the opportunity to file the notice of
appeal.  The district clerk cannot be faulted for doing nothing when the
district clerk is or was unaware of the need to act.  See id.  As
an original proceeding, I would dispatch this proceeding on the merits with
equal ease for the same reason as the Amarillo Court disposed of Minnfee: 
The application for writ of mandamus pending before this Court is denied.

            I note that the reason for this rule
is practical.  And while it forms no basis for what would be my ruling, I
cannot help but note that in another proceeding in this Court, the litigant who
had previously had a suit dismissed as frivolous and had received a letter from
the same deputy district clerk, with essentially the same language in it as did
Smith, had no trouble filing his notice of appeal to appeal that determination
though he contends he ran into a problem when he attempted to file a new suit
while the appeal of his frivolous suit determination was pending.  See In
re Simmonds, No. 10-08-00167-CV, 2008 Tex. App. LEXIS ____ (Tex. App.—Waco November 26, 2008, orig. proceeding) (Maj. Op. at pg. 1-2 and Gray, C.J., dissenting,
at pg. 4, n.3).  

Saved by the Texas Rules of Appellate Procedure

            The problem with granting mandamus
relief is that Smith never gave the district clerk the opportunity to perform
the ministerial duty to file the notice of appeal.  But that alone did not close
the appellate courthouse doors for Smith.  Smith attempted to perfect his
appeal by filing his notice of appeal directly with the appellate court. 
Smith’s problem there is that he sent it to the wrong appellate court,
apparently on the mistaken belief that appeals from Walker County still go to the Houston Courts of Appeals.  They do not.  Tex. Gov’t Code Ann. § 22.201(k) (Vernon Supp. 2008).  As a
result, his mistaken effort to file the notice of appeal in Houston did not yield
the resulting process it normally would have.  Normally, if an appellate court
receives a notice of appeal directly from the litigant, the effect is that the
notice of appeal is deemed to have been filed the same day with the trial court
clerk.  Tex. R. App. P. 25.1(a). 
The result that then follows is that the appellate court dockets the appeal and
the appellate process continues to a disposition.

            Thus, the question we must ask in this
instance is whether the mistaken filing of the notice of appeal with the
Houston Court of Appeals would have the same effect as it would if it had been
filed with this Court.  In this regard, I am guided by the Texas Supreme
Court’s recent rulings in Springer v. Springer, Hood v. Wal-Mart
Stores, Inc., and Higgins v. Randall County Sheriff's Office wherein
they did not allow indigent appeals to be dismissed because the indigence
affidavit was filed late.  Essentially, they did what Rule 1 and the
introductory and advisory comments to the rules instructed and gave the rules a
construction that would allow the litigant’s appeal to be disposed of on the
merits.

            This was in conformity with a long
line of cases that determined if a litigant engaged in a bona fide attempt to
invoke the appellate court’s jurisdiction, a minor defect in the procedure
would not foreclose the invocation of the appellate court’s jurisdiction.  See
Warwick Towers Council v. Park Warwick, L.P., 244 S.W.3d 838, 840 (Tex.
2008) (party made a bona fide attempt to appeal by filing the notice of appeal
in the name of its insured, and by listing its interest in the docketing
statement and other appellate pleadings); Verburgt v. Dorner, 959 S.W.2d
615, 617 (Tex. 1997) (a motion for extension of time is implied when cost bond
filed within 15 day extension period and good cause shown); Linwood v. NCNB
Tex., 885 S.W.2d 102 (Tex. 1994) (where notice of appeal timely filed but
cost bond not filed until 53 days after judgment, notice of appeal  was a bona
fide attempt to invoke the appellate court's jurisdiction); Grand Prairie
Independent School Dist. v. Southern Parts Imports, Inc., 813 S.W.2d 499,
500 (Tex. 1991) (“If the appellant timely files a document in a bona fide
attempt to invoke the appellate court's jurisdiction, the court of appeals, on
appellant's motion, must allow the appellant an opportunity to amend or refile
the instrument required by law or our Rules to perfect the appeal.”); Walker
v. Blue Water Garden Apartments, 776 S.W.2d 578, 581 (Tex. 1989) (affidavit
of inability to pay costs was a sufficient effort to invoke court’s
jurisdiction); Woods Exploration & Producing Co. v. Arkla Equip. Co.,
528 S.W.2d 568, 570 (Tex. 1975) (a defective certificate that a cash deposit
has been made in lieu of bond also invokes appellate jurisdiction despite the
defect); United Ass'n of Journeymen & Apprentices v. Borden, 328 S.W.2d
739, 741 (1959) (a cost bond, even if defective, is sufficient to confer
jurisdiction upon the appellate court as long as the instrument may be said to
be a bond); Grogan Mfg. Co. v. Lane, 169 S.W.2d 141, 141-142 (1943)
(same). 

            In the present proceeding, Smith has
presented a notice of appeal file stamped by the Houston appellate court within
the time in which to invoke appellate jurisdiction to review the dismissal as
frivolous order.  Tex. R. App. P.
26.1.  I do not here assume, however, that the frivolous filing and fee payment
order is, standing alone, a final appealable order.  Such an order, alone, is
an interlocutory order and we would not have jurisdiction to review it until
the suit in which it is rendered is dismissed or otherwise disposed of by the
trial court.  See McCray v. Allee, No. 10-06-00243-CV, 2006 Tex. App. LEXIS 9215 (Tex. App.—Waco Oct. 25, 2006, pet. dism’d).  But our jurisdiction to determine our jurisdiction to review the order is, nevertheless,
invoked by the timely filing of a notice of appeal.

            As applicable to considering the
merits of this mandamus proceeding, I would hold that having filed the notice
of appeal with an appellate court triggered the rule deeming the notice of
appeal as being also filed with the trial court clerk the same day.  The
subsequent determination that the appellate court with which it was actually
filed was the wrong court, and it did not have jurisdiction, does not have the
effect of destroying the deemed filing with the trial court clerk which is in this
Court’s district and, thus, the invocation of the proper appellate court’s,
this Court’s, jurisdiction.

            The deemed filing in the underlying
proceeding had the effect of invoking this Court’s jurisdiction of the appeal
of the frivolous suit determination and assessment of cost.  Because our
jurisdiction to review that order has been properly invoked, all we should have
done is docket a proceeding for the direct appeal, or convert this proceeding
to a direct appeal, and proceed to determine our jurisdiction to review the dismissal. 
Either of these courses of action would make this mandamus proceeding moot
because a direct appeal would have been docketed.  Accordingly, this mandamus
proceeding, if not denied for the reasons previously discussed, would then be
dismissed as moot.  In no event should mandamus relief be granted.  Because the
Court conditionally grants mandamus relief, I respectfully dissent.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Dissenting
opinion delivered and filed November 26, 2008