**In re Clifford Allen SMITH.**

No. 10–08–00286–CV.

Court of Appeals of Texas, Waco.

Nov. 26, 2008.

Clifford Allen Smith, Huntsville, pro se.

Calysta L. Johnson, Office of Attorney General, Austin, for Real Party In Interest.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

Clifford Allen Smith seeks a writ of mandamus compelling Respondent, the Honorable Robyn Flowers, District Clerk of Walker County, to file his notice of appeal and forward the notice to a court of appeals in Houston. We will conditionally grant a portion of the relief requested.

### Background

Smith is seeking to appeal a May 27, 2008 order declaring him to be a vexatious litigant. He mailed a notice of appeal to the Clerk of the First Court of Appeals in Houston on June 9. The clerk of that court stamped Smith's notice of appeal as "received" on June 13. Smith also mailed a letter addressed to a deputy district clerk in Walker County that states in pertinent part, "I am appealing the order issued on May 27." Smith referenced the style and cause number of this case in the letter as well. The deputy district clerk responded by letter dated June 26 that, in view of the

trial court's vexatious litigant order, "our office will not be able to file any more documents for you in ANY of the cases that you have on file in our office." The Clerk of the First Court of Appeals returned all of Smith's documents to him on July 14 with a letter advising him, "My records indicate your appeal is not before this court. The records of the county where your case was tried will show which Court was assigned your case. We are returning your documents."

Smith attempted to file a mandamus petition with the First Court of Appeals, which stamped his petition as "received" on July 25. That stamp is scratched out by a handwritten mark. The petition also contains a July 28 file stamp from the Fourteenth Court of Appeals. However, that file stamp is also scratched out. This Court received Smith's mandamus petition and filed it on August 12.

The Court requested a response to Smith's petition by order dated August 21.[1] Neither Respondent nor the real party in interest has filed a response.

## Applicable Law

 Mandamus relief is available only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Bexar County Criminal Dist. Attorney's Office*, 224 S.W.3d 182, 185 (Tex. 2007) (orig.proceeding); *In re Stearman*, 252 S.W.3d 113, 115 (Tex.App.-Waco 2008, orig. proceeding). Ordinarily our mandamus jurisdiction extends only to district and county judges in our district. *See* TEX. GOV'T CODE ANN. § 22.221(b) (Vernon 2004);

*In re Washington*, 7 S.W.3d 181, 182 (Tex. App.-Houston [1st Dist.] 1999, orig. proceeding) (per curiam). However, we also have jurisdiction to issue a writ of mandamus when "necessary to enforce the jurisdiction of [this] court." TEX. GOV'T CODE ANN. § 22.221(a) (Vernon 2004); *Washington*, 7 S.W.3d at 182; *see In re Smith*, 263 S.W.3d 93, 95 (Tex.App.-Houston [1st Dist.] 2006, orig. proceeding).

 Mandamus relief is appropriate when a trial court clerk fails to file and forward a notice of appeal to the appropriate court of appeals.[2] *See Smith*, 263 S.W.3d at 95–96; *Washington*, 7 S.W.3d at 182; *see also Aranda v. District Clerk*, 207 S.W.3d 785, 786–87 (Tex.Crim.App.2006) (orig.proceeding) (per curiam) (granting mandamus relief where district clerk failed to file postconviction habeas application).

> Once a notice of appeal is delivered to the clerk for filing, whether it is timely or untimely, the determination of appellate jurisdiction must be made by the appellate court. Accordingly, the clerk must file and forward to the appropriate appellate court the notice of appeal, as well as any other materials tendered that are integral to a determination of the appellate timetable.

*Smith*, 263 S.W.3d at 95 (citations omitted).

## Analysis

Smith first complains that Respondent refuses to "file" his notice of appeal. This complaint requires some discussion of what it means to "file" a notice of appeal.

---

1. Chief Justice Gray did not join the order requesting a response and indicated an intent to issue a dissent at a later date.

2. For civil appeals, Rule of Appellate Procedure 25.1(e) requires the appellant to file a copy of the notice of appeal with the appellate court clerk. TEX.R.APP. P. 25.1(e). By con-

trast, Rule 25.2(e) requires the trial court clerk to "immediately send" a copy to the appellate court clerk in criminal appeals. *Id.* 25.2(e). Regardless, a failure to file a copy with the appellate court clerk does not deprive the appellate court of jurisdiction in a civil appeal. *Id.* 25.1(b).

Rule of Appellate Procedure 25.1(a) provides:

> An appeal is perfected when a written notice of appeal is filed with the trial court clerk. If a notice of appeal is mistakenly filed with the appellate court, the notice is deemed to have been filed the same day with the trial court clerk, and the appellate clerk must immediately send the trial court clerk a copy of the notice.

Tex.R.App. P. 25.1(a).

■■ When a pleading such as a notice of appeal is mailed, that pleading "is considered timely filed" if it: (1) is received within ten days after the filing deadline; (2) was sent to the proper clerk by United States mail in a properly addressed and stamped envelope or wrapper; and (3) was deposited in the mail on or before the filing deadline. *Id.* 9.2(b)(1). And when a pleading is mailed by an inmate, the pleading is considered timely if it is received by prison authorities for mailing on or before the deadline. *See Warner v. Glass*, 135 S.W.3d 681, 684 (Tex.2004) (per curiam).

■ As the First Court of Appeals has observed, a document is generally considered to have been "filed" when it is "tendered to the clerk, or otherwise put under the custody or control of the clerk." *Smith*, 263 S.W.3d at 95 (quoting *Jamar v. Patterson*, 868 S.W.2d 318, 319 (Tex.1993) (per curiam)). A document is considered filed "whether or not a file mark is placed on the instrument." *Id.* (quoting *Warner*, 135 S.W.3d at 684). But the term "filed" has a different meaning when viewed from the perspective of the clerk. The clerk "files" a document by indorsing a file mark on it, recording it in the clerk's file docket, and maintaining the document in the clerk's file for the suit. *See* Tex.R. Civ. P. 24, 25, 26; Tex. Gov't Code Ann. § 51.303 (Vernon 2005).

Although Rule 25.1(a) explains that an appeal is perfected by filing the notice of appeal with the trial court clerk, the rule also provides that an appeal is perfected when the notice of appeal is "mistakenly filed with the appellate court." *See* Tex. R.App. P. 25.1(a). We assume without deciding that Rule 25.1(a)'s reference to "the appellate court" refers to the appellate court with jurisdiction over the county or district court from which an appeal is taken. *See* Tex.R.App. P. 9.2(b)(1)(A) (document considered timely filed if "it was sent to the *proper* clerk") (emphasis added).

Here, Smith attempted to file his notice of appeal by mailing it to the First Court of Appeals. This was ineffective to perfect his appeal because Walker County is not within the geographic jurisdiction of the First Court of Appeals.[3] *See* Tex. Gov't Code Ann. § 22.201(b) (Vernon Supp.2008). Rather, Walker County currently lies within the geographic jurisdiction of this Court. *Id.* § 22.201(k) (Vernon Supp. 2008).

■ But Smith then sent a letter to Respondent stating, "I am appealing the order issued on May 27." Smith referenced the style and cause number of this case in the letter as well. A document is sufficient to perfect an appeal if it "was filed in a bona fide attempt to invoke appellate court jurisdiction." *Warwick Towers Council of Co–Owners v. Park Warwick, L.P.*, 244 S.W.3d 838, 839 (Tex.2008) (per curiam) (quoting *Walker v. Blue Water Garden Apts.*, 776 S.W.2d 578, 581 (Tex.1989)). Here, Smith's letter plainly stated his intent to appeal and identified

---

3. Walker County did lie within the First Court of Appeals District until September 1, 2005. *See* Act of May 1, 2003, 78th Leg., R.S., ch. 44, § 1, 2003 Tex. Gen. Laws 81, 81, *amended by* Act of May 27, 2005, 79th Leg., R.S., ch. 542, § 1, 2005 Tex. Gen. Laws 1466, 1466.

the style and cause number of the case. This letter was a sufficient notice of appeal. *See id.*

 However, instead of filing Smith's notice of appeal and forwarding it to this Court, Respondent notified Smith that she would not "file any more documents" in "ANY" of his cases. Respondent committed a clear abuse of discretion by refusing to file Smith's notice of appeal and forward a copy to this Court. *See Smith,* 263 S.W.3d at 95–96.

Any contention that Respondent was authorized to refuse to file Smith's notice of appeal because of the vexatious litigant order would be misplaced. Rather, a party such as Smith may seek appellate review of a court's finding that he is a vexatious litigant. *See, e.g., Douglas v. Am. Title Co.,* 196 S.W.3d 876, 877 (Tex.App.-Houston [1st Dist.] 2006, no pet.); *Willms v. Am. Tire Co.,* 190 S.W.3d 796, 799 (Tex. App.-Dallas 2006, pet. denied). And to pursue such an appeal, the party must necessarily be able to file a notice of appeal in the same proceeding in which he has been declared a vexatious litigant. *See* TEX.R.APP. P. 25.1(a).

Any contention that Smith's notice of appeal does not comply with the requirements of the appellate rules is for this Court to determine once that document has been filed by Respondent and forwarded to this Court in the customary manner Respondent and other trial court clerks forward notices of appeal to this Court. *See Smith,* 263 S.W.3d at 95; *Washington,* 7 S.W.3d at 182.

Smith also requests that Respondent be ordered to forward his notice of appeal to a court of appeals in Houston. As stated, however, Walker County (from which Smith's appeal arises) lies within the geographic jurisdiction of this Court rather than the Houston Courts of Appeals. TEX. GOV'T CODE ANN. § 22.201(b), (k), (*o*) (Ver-

non Supp.2008). Accordingly, that request is denied.

We conditionally grant the requested writ in part. The writ will issue only if Respondent fails to advise this Court in writing within fourteen days after the date of this opinion that she has filed Smith's notice of appeal, effective on the date she received it, and is forwarding same to this Court in the customary manner.

Chief Justice GRAY dissenting.

## DISSENTING OPINION

TOM GRAY, Chief Justice.

We should not have yet requested a response in this proceeding. Having requested a response, we should now deny the petition or dismiss it as moot. Because the Court, nevertheless, has requested a response and conditionally granted relief, I dissent.

### BACKGROUND

This is an original proceeding, a petition for a writ of mandamus. By this proceeding, Clifford Allen Smith asks us to compel the district clerk of Walker County to file a notice of appeal. There are, however, a number of procedural and substantive impediments to Smith's ability to show his entitlement to relief. The Court chooses to ignore the impediments, skipping over them or brushing them aside, so that it can proceed to the remedy. I would not.

Some of the issues are more obvious than others. After a cursory review of the petition, I drew at least four of them to the Court's attention. The Court, nevertheless, continued on its charted course and requested a response, even before I had time to prepare my dissent to the request. I noted that Smith's problems were not going to change if the Court waited on my

dissent and the Court most assuredly could not consider the unprepared dissent at the time the request for a response was made. Likewise, the responding parties had no way of knowing at the time they received the request for a response of the reasons why I dissented, though they were told of the fact of my dissent. Because of the number of problems, I will generally address them in the normal order in which they arise and in which they should be resolved. I must first briefly digress to discuss the general purpose of the Rules of Appellate Procedure and the assignment of responsibilities in those rules. I will then proceed to discuss how the Court has failed to follow those rules and interfered with the responsibilities therein allocated.

### RULES OF APPELLATE PROCEDURE

Unlike the Rules of Civil Procedure, the Rules of Appellate Procedure do not contain a statement or rule regarding the objective of the rules. The Rules of Appellate Procedure, however, were originally part of the Rules of Civil Procedure until they were recodified as a freestanding set of rules in 1986. Thus, Rule 1 from the Rules of Civil Procedure states the salutary objective and purpose of those rules, and likewise, the Rules of Appellate Procedure previously included within those rules.

Rule 1 states, as it has since its adoption in 1940:

### Rule 1. Objective of Rules

The proper objective of rules of civil procedure is to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law. To the end that this objective may be attained with as great expedition and dispatch and at the least expense both to the litigants and to the state as may be practicable, these rules shall be given a liberal construction.

Oct. 29, 1940, eff. Sept. 1, 1941.

In 1966, a General Commentary was added to Rule 1. The text of the commentary was, for the most part, from law review articles of the period when the rules were first adopted. That text in its entirety is as follows:

### General Commentary—1966

Following are excerpts from Hutcheson, Federal v. State Rules, 4 Texas B.J. 459 (1941):

" * * * the prime consideration in making, and in the administration of, any set of modern procedural rules is function not method, that method shall be the servant, function the master. What is important is the ends which the drafters had in mind accomplishing, and the spirit toward the accomplishment of those ends which breathes in and through them.

"Whatever may have been the case in earlier times, a study of bar association proceedings, law journals, treatises, articles by lawyers, judges and teachers, for many years past, will convince that we are all now in agreement with the view thus expressed by Roy McDonald [The Background of the Texas Procedural Rules, 19 Texas L.Rev. at 229 (1941) ].

"It is essential that we agree upon a statement of the end value of civil procedure * * * the aim of civil procedure is to provide an organized forum for the orderly adjudication of controversies between parties and to provide for such tribunal rules of operation (a) which will develop as completely as possible within the human limitations of the society in which the court operates, a complete knowledge of all the facts which created friction; and (b) which will assist in the evaluation of such events from the

standpoint of justice and the awarding of such consequences as accord with the maximum feasible conceptions of justice in the conditioning society.

"Any procedural device or rule therefore, which impedes the investigation or the evaluation of the facts or the awarding of the just consequences thereon, is incompatible with an ideal procedure. No mere rule of procedural form or courtesy should be allowed to delay or control the disposition of the litigation upon its merits.

"No judgment should ever be rendered in the trial court which is based upon mere procedural technicalities and no judgment which follows a full and otherwise correct trial upon the actual issues in controversy between the parties, should ever be reversed because of such informalities. There is no vested right in rules of procedure; much less is there any vested right in procedural errors.'

"These abstractions will be admitted by all to be true as far as they go, to be necessary postulates on which the administration of justice in the courts should proceed. But it is dangerous to generalize thus, unless there is full recognition that such generalization does not mean that procedural rules are of no intrinsic value and that they are written but to be disobeyed. The contrary is true of any set of good procedural rules and of any good administration under them. Procedural rules are the manners of the law and they are expected to be observed."

Following are excerpts from Vinson, Federal and Texas Rules of Appellate Procedure—a Comparison, 20 Texas L.Rev. 46 (1941):

" * * * The declared purpose of the rules in both systems is 'to secure the just, speedy, and inexpensive determina-tion of every action,' and to that end a Texas rule specifically provides that they 'shall be given a liberal construction.' The success of the rules, and the attainment of the desired ends, depend upon the intelligent and whole-hearted co-operation of the bar, and their administration by efficient, competent and impartial judges 'without which codes merely add to an accumulation of legal futilities.'

* * *

"The responsibility of the bench and bar in the enforcement of the rules is mutual and reciprocal. When it is realized and acknowledged that procedural methods are but aids to the orderly administration of justice, and are not 'the thing' to be tried, it will mark the dawning of a new day. A trial should not be permitted to degenerate into a joust between counsel on mere maters of procedure. While the rules are not to be flouted, their importance should not be unduly magnified or made to overshadow or obscure the merits of the controversy. They should not be applied to defeat 'the justice and right of the case' which Judge Phillips said in *Gilmore v. O'Neil,* 107 Tex. 18, 173 S.W. 203 (1915), was 'what the law of a case ought to be.' The human factor must be given fair play, however, and rigid enforcement is neither within the letter nor the spirit of the rules. If a violation of a rule has not affected, or deprived a party of, a substantial right, it should be disregarded or a correction allowed. It is hoped that the appellate courts will not deem it to be their duty to devote the major part of their opinions to explaining and construing the rules. Reversals for procedural defects should not be allowed except where they are necessary to prevent manifest injustice.
* * *

"The rules are entitled to an honest and conscientious trial. If the bench and bar will grasp their spirit, and co-operate in their application, they will, without doubt, view the result with satisfaction, and experience the sense of pride which comes with the accomplishment of a thing worthwhile."

And although these were the Rules of Civil Procedure, as indicated above, this rule and these comments were from a time when the Rules of Appellate Procedure were included therein. In fact, the "Opinions of Subcommittee on Interpretation of Rules" specifically addressed appeals as follows:

### Opinions of Subcommittee on Interpretation of Rules

[With respect to appeals] the policy of the Rules is not to punish missteps and changes of plan but to reach the merits of appeals. 5 Texas B.J. 427 (1942), 8 Texas B.J. 26 (1945).

Rule 1 requires that liberal construction be given to all the rules in order to adjudicate "the rights of litigants under established principles of substantive law." 5 Texas B.J. 426 (1942), 7 Texas B.J. 152 (1944), 8 Texas B.J. 24, 46, 221 (1945).

Rules should be so construed as to attain real justice between the parties. 6 Texas B.J. 20 (1943), 8 Texas B.J. 30 (1945).

The purpose and intention of the new Rules is to obtain justice. 5 Texas B.J. 168 (1942), 8 Texas B.J. 12 (1945).

The Statutes and Rules giving "precedence" to certain types of cases do not mean that the court can transact no other business until all such cases pending on the docket are disposed of. Such Statutes and Rules should be given a reasonable construction and a construction calculated to attain justice; and

therefore where the application of the exact wording in regard to giving certain cases precedence would result in injustice it is within the discretion of the court to relax the requirements sufficiently to avoid such injustice. 6 Texas B.J. 550 (1943), 8 Texas B.J. 38 (1945).

Thus, the drafters of the rules, as well as commentators and scholars from the beginning, recognized that there was a need for balance. A rule that was enforced at the risk of jeopardizing "justice" was a problem. But likewise, a rule that by its design is to be applied to all, when not enforced in a particular case, threatens to undermine the equality of justice for which we must strive. We cannot, in the name of justice, abandon the consistent application of the rule. For it is the consistent application of the rule that makes the law equal to all similarly situated litigants. And it is the consistent application of the rule that gives the law its predictability. And it is the predictability of the law that allows each person to know what result will be obtained on a certain set of facts such that they need not test the law repeatedly to see if their roll of the die will yield a different result. In this way, precedent, or stare decisis, is absolutely critical to the efficient operation of our judicial system.

And to be able to follow precedent, stare decisis, we must carefully articulate, as a Court, the justification for any departure from the application of the rules. By a clear articulation of why a rule is not being enforced, a court creates exceptions to the application of the rules. And the court should be expected to apply the exception as consistently as it does the rule.

But if a court fails to define, describe, or explain the circumstances in which the exception is applied, then there is no guide; without a guide, there is no consistency;

without consistency, there is no predictability; and without predictability, there is chaos. Where there is chaos, there is uncertainty; and it is expensive to bring order and certainty from chaos.

Thus, consistent application of the rules leads to efficiency. Efficiency leads to speed. And in many situations, the speed of the system of justice can be its greatest attribute, but only if we ultimately get the answer right for the right reason.

With the objective of balancing the need for speed and the need for consistent application of both the rules and the exceptions thereto, I now turn to the Court's failure to apply the rules to this proceeding, and its corresponding failure to articulate whether it is creating an exception, applying an existing exception, or simply ignoring the system to proceed to a result.

### THE FEE

"At this Court, our clerk files everything tendered for filing and tries to collect the fees later if they are not paid at the time of filing. This is a matter of convenience because we do not have a way to keep track of pleadings that remain unfiled because the filing fee has not been paid. Our system has created its own set of problems. Just a few of those problems are (1) the clerk must act as a collection agent for our Court, (2) there is a different treatment by justices if the fee remains unpaid, and (3) the need to write off uncollected filing fees." *In re Lewis*, 185 S.W.3d 615, 620 (Tex.App.-Waco 2006, orig. proceeding) (Gray, C.J., dissenting) (footnote omitted).

But notwithstanding the issue of convenience, "[a]bsent a specific exemption, the Clerk of the Court must collect filing fees at the time a document is presented for filing. TEX.R.APP. P. 12.1(b); Appendix to TEX.R.APP. P., Order Regarding Fees (July 21, 1998); *see also* TEX.R.APP. P. 5; 10TH

TEX.APP. (Waco) Loc. R. 6; TEX. GOV'T CODE ANN. §§ 51.207(b), 51.901 (Vernon 2005)." *In re Reyes*, 195 S.W.3d 127, 128 (Tex. App.-Waco 2005, orig. proceeding). *See also Watkins v. State*, 226 S.W.3d 737, 739 (Tex.App.-Waco 2007, order).

To the extent necessary and under some circumstances, we suspend the rule and order the Clerk to write off all filing fees in a case. TEX.R.APP. P. 2; *see In re Williamson*, No. 10–07–00032–CV, 2007 WL 475343, 2007 Tex.App. LEXIS 1217 (Tex.App.-Waco Feb. 14, 2007, orig. proceeding) (mem.op.).

Smith did not pay the filing fee for his petition for writ of mandamus. We should not continue in this proceeding until the issue of payment of the filing fee is resolved. If Smith is indigent, Rule 20 is available to allow him to proceed without the advance payment of costs. TEX.R.APP. P. 20.1. Even though that rule appears on its face to require the filing of an indigence affidavit at the time the proceeding is filed, the Texas Supreme Court has made it clear that a late filed indigence affidavit must be considered. *See Springer v. Springer*, 240 S.W.3d 871 (Tex.2007); *Hood v. Wal–Mart Stores, Inc.*, 216 S.W.3d 829, 830 (Tex.2007); *Higgins v. Randall County Sheriff's Office*, 193 S.W.3d 898 (Tex.2006).

You will note that this duty to collect the filing fee is assigned to the Clerk. *See* TEX.R.APP. P. 12.1(b). We should allow, indeed we should demand, that the Clerk comply with her duty and not interfere with or impede her ability to do so. When the Court recognizes that this situation is presented, we should notify the Clerk of this procedural problem and allow her to resolve it before proceeding. Instead, the Court controlled all aspects of the indigence determination and thus unnecessarily expended its resources thereon.

## PROOF OF SERVICE

All documents presented for filing must be served on the opposing parties and the document must contain proof of service. Specifically, Rule 9.5(a) provides:

(a) *Service of All Documents Required.* At or before the time of a document's filing, the filing party must serve a copy on all parties to the proceeding. But a party need not serve a copy of the record.

TEX.R.APP. P. 9.5(a). And Rule 9.5(d) provides:

(d) *Proof of Service.* A document presented for filing must contain a proof of service in the form of either an acknowledgement of service by the person served or a certificate of service. Proof of service may appear on or be affixed to the filed document. The clerk may permit a document to be filed without proof of service, but will require the proof to be filed promptly.

TEX.R.APP. P. 9.5(d).

To determine who must be served with a petition for writ of mandamus as "a party to the proceeding," we must turn to Rule 52.2 which designates the identities, including the label, for each party to the proceeding.

The party seeking the relief is the relator. In original proceedings other than habeas corpus, the person against whom relief is sought—whether a judge, court, tribunal, officer, or other person—is the respondent. A person whose interest would be directly affected by the relief sought is a real party in interest and a party to the case.

TEX.R.APP. P. 52.2. In this proceeding, Smith is the relator, Walker County District Clerk, Robyn Flowers, is the respondent, and Brad Livingston, et al., are the real parties in interest.

However, when we turn to the proof of service included in the petition, we find that the real parties in interest have not been served. The Certificate of Service is as follows:

### Certificate of Service

I certify that a true and correct copy of the foregoing Application for Writ of Mandamus minus some of the exhibits has been sent to the District Clerk of Walker County:

Roybn (sic) Flowers

1100 University Ave, Ste. 209

Huntsville, Tx. 77349

Mailed U.S. Mail on July 18th, 2008 (provided R. Quada L.L. Supervisor and indigent supplies designate for the Wynne Unit will mail this).

*Clifford Allen Smith*

I would not proceed until all parties have been properly served. How can we expect the real party in interest to effectively participate if the party was not served with a copy of the petition? I will address Smith's express failure to serve all the exhibits under the heading "Appendix."

You will note that this duty to file only documents with a proof of service or to require the prompt proof thereof is assigned to the Clerk. *See* TEX.R.APP. P. 9.5(d). We should allow, indeed we should demand, that the Clerk comply with her duty and not interfere with or impede her ability to do so. I would notify the Clerk of this procedural problem and allow her to resolve it.

## FORM AND CONTENTS

The Rules of Appellate Procedure specify the form and contents of the petition. TEX.R.APP. P. 52.3. The rule provides that the "petition must, under appropriate

headings and in the order here indicated, contain the following:

(a) *Identity of Parties and Counsel* ....

(b) *Table of Contents* ....

(c) *Index of Authorities* ....

(d) *Statement of the Case* ....

(e) *Statement of Jurisdiction* ....

(f) *Issues Presented* ....

(g) *Statement of Facts* ....

(h) *Argument* ....

(i) *Prayer* ....

(j) *Appendix* ....

Tex.R.App. P. 52.3.

The required items *not included* in Smith's petition are:

1. *Identity of Parties and Counsel*—needed so that the members of the Court may properly consider disqualification and recusal issues;

2. *Table of Contents;*

3. *Index of Authorities*—however, only one authority is cited in the entire petition;

4. *Statement of the Case*—this is simply interspersed with the issues presented, statement of facts, and argument;

5. *Statement of Jurisdiction*—which in this case is a central issue since Smith is attempting to obtain a mandamus against a district clerk;

a. *Issues Presented*—this item, when properly set out, helps the Court focus on the precise issue it is being asked to decide. Here, it is jumbled together with the statement of the case, statement of facts and argument;

6. *Statement of Facts*—*see* Issues Presented; and

7. *Argument*—*see* Issues Presented.

*See id.*

Notwithstanding the horrible deviation from the required contents, we are able to discern, to some extent, Smith's complaint, the details of which will be more fully discussed below. Because we are required to give a pro se litigant some latitude in their pleadings, I would not endeavor to obtain any clarification of these procedural deficits. *See Pena v. McDowell,* 201 S.W.3d 665, 667 (Tex.2006); *Wheeler v. Green,* 157 S.W.3d 439, 444 (Tex.2005); *Baughman v. Baughman,* 65 S.W.3d 309, 312 (Tex.App.-Waco 2001, pet. denied); Tex.R.App. P. 38.9. Because the issue in this proceeding is so narrow, we are not giving the pro se party a procedural advantage by foregoing strict compliance with the rules regarding the contents of the petition.

## VERIFICATION

Smith's verification is defective. Rule 52.3 states:

**52.3. Form and Contents of Petition**

All factual statements in the petition must be verified by affidavit made on personal knowledge by an affiant competent to testify to the matters stated.

Tex.R.App. P. 52.3.

Smith's verification is as follows:

I verify that the information contained in this Application for Writ of Mandamus is true and correct to the best of my knowledge.

Signed July 17th, 2008.

*Clifford Allen Smith*

It has been frequently stated that a verification that does not expressly state that the facts are based on personal knowledge such that perjury can be assigned upon it is inadequate as a verification. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984); *Burke v. Satterfield,* 525 S.W.2d 950, 954–55 (Tex.1975). Because Smith's affidavit is not based on personal knowledge, but rather upon only "the best of [his] knowledge," it is not adequate.

Further, because inmates do not ordinarily have access to a notary public, the Legislature has specified the precise form to be used by an inmate as a substitute when a verification is required of an inmate. TEX. CIV. PRAC. & REM.CODE ANN. § 132.001 (Vernon 2005). The requirements of the declaration are described in section 132.002 and section 132.003 provides the specific language to be used as follows:

### § 132.003. Form of Declaration

The form of a declaration under this chapter must be substantially as follows:

"I, (insert name and inmate identifying number from Texas Department of Corrections or county jail), being presently incarcerated in (insert Texas Department of Corrections unit name or county jail name) in _____ County, Texas, declare under penalty of perjury that the foregoing is true and correct. Executed on (date). (signature)" *Id.* § 132.003. Smith's affidavit clearly fails *to comply with the statutory alternative for inmates.*

This is both a substantive and procedural problem. We should notify Smith of this defect and if it is not corrected, deny the petition. We should not grant relief upon this defective verification.

#### APPENDIX

The petition does contain a section denominated as an Appendix, but it does not contain the necessary contents of the appendix. *See* TEX.R.APP. P. 52.3(j). I have previously lamented this Court's inconsistent enforcement of the requirements for the necessary contents of an appendix. *Steele v. McDonald,* 195 S.W.3d 349 (Tex. App.-Waco 2006) (concurring opinion to letter order). As recently as October 28, 2008, this Court has threatened to strike a brief because it failed to contain the necessary appendix. *Rutledge v. Leonard,* 10-

07–00376–CV (Tex.App.-Waco, Oct. 28, 2008) (unpublished letter order).

The necessary contents of the appendix are set out in Texas Rule of Appellate Procedure 52.3(j). It provides:

(j) *Appendix.*

(1) Necessary Contents. The appendix must contain:

(A) a certified or sworn copy of any order complained of, or any other document showing the matter complained of;

(B) any order or opinion of the court of appeals, if the petition is filed in the Supreme Court;

(C) unless voluminous or impracticable, the text of any rule, regulation, ordinance, statute, constitutional provision, or other law (excluding case law) on which the argument is based; and

(D) if a writ of habeas corpus is sought, proof that the relator is being restrained.

(2) Optional Contents. The appendix may contain any other item pertinent to the issues or points presented for review, including copies or excerpts of relevant court opinions, statutes, constitutional provisions, documents on which the suit was based, pleadings, and similar material. Items should not be included in the appendix to attempt to avoid the page limits for the petition. The appendix should not contain any evidence or other item that is not necessary for a decision.

TEX.R.APP. P. 52.3(j).

The contents in the appendix appear to be those required by Texas Rule of Appellate Procedure 52.3(j)(1)(A). But the contents in the appendix are not certified copies. This problem is more significant in this proceeding because, as discussed below, the appendix is substituting for the record. Further, even if the defects in the

verification to the petition are ignored, the contents to the appendix are not sworn to because they are not included by reference in the verification nor are they incorporated into the petition for all purposes. For this reason, the contents of the appendix cannot be relied upon. Further, the proof of service expressly states that some of the appendix was not served on the Respondent.

I would notify Smith of this problem and resolve it before continuing.

## RECORD

In addition to the petition, the relator must file a record. TEX.R.APP. P. 52.7. The Rule provides:

**52.7. Record**

(a) *Filing by Relator Required.* Relator must file with the petition:

(1) a certified or sworn copy of every document that is material to the relator's claim for relief and that was filed in any underlying proceeding; and

(2) a properly authenticated transcript of any relevant testimony from any underlying proceeding, including any exhibits offered in evidence, or a statement that no testimony was adduced in connection with the matter complained.

(b) *Supplementation Permitted.* After the record is filed, relator or any other party to the proceeding may file additional materials for inclusion in the record.

(c) *Service of Record on All Parties.* Relator and any party who files materials for inclusion in the record must—at the same time—serve on each party:

(1) those materials not previously served on that party as part of the record in another original appellate proceeding in the same or another court; and

(2) an index listing the materials filed and describing them in sufficient detail to identify them.

TEX.R.APP. P. 52.7. No separate record has been filed. It appears, however, that the appendix might contain the only documents upon which Smith relied.

If the only documents being relied upon were attached to the petition as an appendix, served with the petition, and were properly sworn to or verified as part of the petition, I would not find the record to be a deficiency that needed to be corrected. The problem in this instance is that, as mentioned above, the proof of service affirmatively demonstrates that the appendix served on the respondent did not contain all the contents of the appendix filed with the Court. Thus, a complete and adequate record has not been served on the respondent. Further, as previously stated, nothing at all has been served on the real party in interest. Finally, as mentioned above, the contents of the appendix are not properly verified and, therefore, cannot serve as a proper record.

I would notify Smith of this problem and resolve it before continuing.

## MERIT REVIEW

Having systematically covered the many problems of the form and content of Smith's petition, I now turn to the lack of merit for his petition and the substantive problems lurking therein. Smith's fundamental argument is that because he was told by a deputy district clerk that he would not be allowed to file anything else in the Walker County District Clerk's Office because his suit had been dismissed as frivolous, he filed his notice of appeal with the appellate court clerk for the Houston Court of Appeals. It was assigned to the First Court of Appeals.

Smith wanted to appeal the trial court's determination that his suit was frivolous. He asserts that order is an appealable order. The notice of appeal was received and filed on June 13, 2008 by the First Court of Appeals in Houston. He claims that on July 14, 2008, he learned that his appeal had not been docketed and was being returned to him.

Smith then sent his Petition for Writ of Mandamus to the Houston Courts of Appeals. The copy he filed with us reflects a "Received" stamp of July 25, 2008 by the First Court of Appeals and a "Filed" stamp of July 28, 2008 by the Fourteenth Court of Appeals that has been marked through.

"Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). Traditionally, the writ of mandamus issued only to compel the performance of a ministerial act or duty. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). Since the 1950's, however, the Texas Supreme Court has used the writ to correct a "clear abuse of discretion" committed by the trial court. *Id.* A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* (quoting *Johnson v. Fourth Court of Appeals,* 700 S.W.2d at 917). Further, mandamus will not issue where there is "a clear and adequate remedy at law, such as a normal appeal." *Id.* at 840 (quoting *State v. Walker,* 679 S.W.2d 484, 485 (Tex.1984)). Mandamus is intended to be an extraordinary remedy, available only in limited circumstances. *Id.* The writ will issue "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Id.* (quoting

*Holloway v. Fifth Court of Appeals,* 767 S.W.2d 680, 684 (Tex.1989)).

Mandamus against a district clerk is appropriate if the acts of the district clerk interfere with this Court's jurisdiction. *See* TEX. GOV'T CODE ANN. § 22.221(a), (b) (Vernon 2004). Smith has not shown that the district clerk failed or refused to file Smith's notice of appeal. He does not even contend that he ever presented his notice of appeal to the district clerk for filing. Actually, based upon the petition, it is very clear that Smith never gave the district clerk the opportunity to file the notice of appeal.

The Amarillo Court succinctly addressed a similar problem.

Simply put, before mandamus relief may issue, the petitioner must establish that the district court 1) had a legal duty to perform a non-discretionary act, 2) was asked to perform the act, and 3) failed or refused to do it. *O'Connor v. First Court of Appeals,* 837 S.W.2d 94, 97 (Tex.1992); *In re Chavez,* 62 S.W.3d 225, 228 (Tex.App.-Amarillo 2001, orig. proceeding). Given this, it is encumbent upon Minnfee to illustrate that the district court received and was aware of his motion. This is so because a court cannot be faulted for doing nothing when it is or was unaware of the need to act. Here, Minnfee states in his petition that he "directed" the motion to the district court on June 9, 2008, but whether the court was ever made aware of it is unknown. Lacking that information, we cannot simply assume that the district court knew of its duty to act and neglected to perform it. Thus, Minnfee has not fulfilled his burden to illustrate that the trial court refused to act.

Accordingly, the application for writ of mandamus pending before this court is denied.

*In re Minnfee*, No. 07–08–0416–CV, 2008 WL 4643870, 2008 Tex.App. LEXIS 7982 (Tex.App.-Amarillo Oct. 21, 2008, orig. proceeding).

In this proceeding, Smith never gave the district clerk of Walker County the opportunity to file the notice of appeal. The district clerk cannot be faulted for doing nothing when the district clerk is or was unaware of the need to act. *See id.* As an original proceeding, I would dispatch this proceeding on the merits with equal ease for the same reason as the Amarillo Court disposed of *Minnfee*: The application for writ of mandamus pending before this Court is denied.

I note that the reason for this rule is practical. And while it forms no basis for what would be my ruling, I cannot help but note that in another proceeding in this Court, the litigant who had previously had a suit dismissed as frivolous and had received a letter from the same deputy district clerk, with essentially the same language in it as did Smith, had no trouble filing his notice of appeal to appeal that determination though he contends he ran into a problem when he attempted to file a new suit while the appeal of his frivolous suit determination was pending. *See In re Simmonds*, No. 10–08–00167–CV, 271 S.W.3d 874, 2008 WL 5093535, 2008 Tex. App. LEXIS —— (Tex.App.-Waco November 26, 2008, orig. proceeding) (Maj. at 876–77 and Gray, C.J., dissenting, at 885 n. 3).

### SAVED BY THE TEXAS RULES OF APPELLATE PROCEDURE

The problem with granting mandamus relief is that Smith never gave the district clerk the opportunity to perform the ministerial duty to file the notice of appeal. But that alone did not close the appellate courthouse doors for Smith. Smith attempted to perfect his appeal by filing his notice of appeal directly with the appellate court. Smith's problem there is that he sent it to the wrong appellate court, apparently on the mistaken belief that appeals from Walker County still go to the Houston Courts of Appeals. They do not. TEX. GOV'T CODE ANN. § 22.201(k) (Vernon Supp. 2008). As a result, his mistaken effort to file the notice of appeal in Houston did not yield the resulting process it normally would have. Normally, if an appellate court receives a notice of appeal directly from the litigant, the effect is that the notice of appeal is deemed to have been filed the same day with the trial court clerk. TEX.R.APP. P. 25.1(a). The result that then follows is that the appellate court dockets the appeal and the appellate process continues to a disposition.

Thus, the question we must ask in this instance is whether the mistaken filing of the notice of appeal with the Houston Court of Appeals would have the same effect as it would if it had been filed with this Court. In this regard, I am guided by the Texas Supreme Court's recent rulings in *Springer v. Springer, Hood v. Wal–Mart Stores, Inc.,* and *Higgins v. Randall County Sheriff's Office* wherein they did not allow indigent appeals to be dismissed because the indigence affidavit was filed late. Essentially, they did what Rule 1 and the introductory and advisory comments to the rules instructed and gave the rules a construction that would allow the litigant's appeal to be disposed of on the merits.

This was in conformity with a long line of cases that determined if a litigant engaged in a bona fide attempt to invoke the appellate court's jurisdiction, a minor defect in the procedure would not foreclose the invocation of the appellate court's jurisdiction. *See Warwick Towers Council v. Park Warwick, L.P.,* 244 S.W.3d 838, 840 (Tex.2008) (party made a bona fide

attempt to appeal by filing the notice of appeal in the name of its insured, and by listing its interest in the docketing statement and other appellate pleadings); *Verburgt v. Dorner,* 959 S.W.2d 615, 617 (Tex. 1997) (a motion for extension of time is implied when cost bond filed within 15 day extension period and good cause shown); *Linwood v. NCNB Tex.,* 885 S.W.2d 102 (Tex.1994) (where notice of appeal timely filed but cost bond not filed until 53 days after judgment, notice of appeal was a bona fide attempt to invoke the appellate court's jurisdiction); *Grand Prairie Independent School Dist. v. Southern Parts Imports, Inc.,* 813 S.W.2d 499, 500 (Tex. 1991) ("If the appellant timely files a document in a bona fide attempt to invoke the appellate court's jurisdiction, the court of appeals, on appellant's motion, must allow the appellant an opportunity to amend or refile the instrument required by law or our Rules to perfect the appeal."); *Walker v. Blue Water Garden Apartments,* 776 S.W.2d 578, 581 (Tex.1989) (affidavit of inability to pay costs was a sufficient effort to invoke court's jurisdiction); *Woods Exploration & Producing Co. v. Arkla Equip. Co.,* 528 S.W.2d 568, 570 (Tex.1975) (a defective certificate that a cash deposit has been made in lieu of bond also invokes appellate jurisdiction despite the defect); *United Ass'n of Journeymen & Apprentices v. Borden,* 160 Tex. 203, 328 S.W.2d 739, 741 (1959) (a cost bond, even if defective, is sufficient to confer jurisdiction upon the appellate court as long as the instrument may be said to be a bond); *Grogan Mfg. Co. v. Lane,* 140 Tex. 507, 169 S.W.2d 141, 141–142 (1943) (same).

In the present proceeding, Smith has presented a notice of appeal file stamped by the Houston appellate court within the time in which to invoke appellate jurisdiction to review the dismissal as frivolous order. Tᴇx.R.Aᴘᴘ. P. 26.1. I do not here assume, however, that the frivolous filing and fee payment order is, standing alone, a final appealable order. Such an order, alone, is an interlocutory order and we would not have jurisdiction to review it until the suit in which it is rendered is dismissed or otherwise disposed of by the trial court. *See McCray v. Allee,* No. 10–06–00243–CV, 2006 WL 3028142, 2006 Tex. App. LEXIS 9215 (Tex.App.-Waco Oct. 25, 2006, pet. dism'd). But our jurisdiction to determine our jurisdiction to review the order is, nevertheless, invoked by the timely filing of a notice of appeal.

As applicable to considering the merits of this mandamus proceeding, I would hold that having filed the notice of appeal with an appellate court triggered the rule deeming the notice of appeal as being also filed with the trial court clerk the same day. The subsequent determination that the appellate court with which it was actually filed was the wrong court, and it did not have jurisdiction, does not have the effect of destroying the deemed filing with the trial court clerk which is in this Court's district and, thus, the invocation of the proper appellate court's, this Court's, jurisdiction.

The deemed filing in the underlying proceeding had the effect of invoking this Court's jurisdiction of the appeal of the frivolous suit determination and assessment of cost. Because our jurisdiction to review that order has been properly invoked, all we should have done is docket a proceeding for the direct appeal, or convert this proceeding to a direct appeal, and proceed to determine our jurisdiction to review the dismissal. Either of these courses of action would make this mandamus proceeding moot because a direct appeal would have been docketed. Accordingly, this mandamus proceeding, if not denied for the reasons previously discussed, would then be dismissed as moot. In no event should mandamus relief be

granted. Because the Court conditionally grants mandamus relief, I respectfully dissent.